# IN THE COURT OF APPEALS OF IOWA

No. 13-1420
Filed March 26, 2014

**IN THE INTEREST OF K.S., B.S., AND G.B.,**
**Minor Children,**

**R.S., Father,**
**Appellant,**

**B.T., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Louise M. Jacobs, District Associate Judge.

A mother and father separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**

Bryan J. Tingle, Des Moines, for appellant father.

Magdalena Reese of Carr & Wright, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Annette Taylor, Assistant County Attorney, for appellee State.

Erin Mayfield of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**DOYLE, J.**

B.T., the mother of G.B., born in 2007, K.S., born in 2011, and B.S., born in 2012, appeals the termination of her parental rights. R.S., the father of K.S. and B.S., also appeals the termination of his parental rights. Both parents[1] argue the State failed to prove the grounds for termination and that termination of their parental rights is not in the children's best interests. Additionally, both contend Iowa Code section 232.116(3)(a) and (c) (2013) applies to avoid termination of their parental rights. Upon our de novo review, we affirm on both appeals.

### I. Background Facts and Proceedings.

The parents have a history of substance abuse, domestic violence, and criminal activities. In September 2010, the mother received a deferred judgment after she pled guilty to the charge of obtaining or attempting to obtain a prescription drug by fraud, deceit, misrepresentation, or subterfuge, a class "C" felony. She was placed on probation for three years. As part of her probation, she underwent a substance abuse evaluation, which recommended she participate in an intensive-outpatient-treatment program. She agreed to participate, and in February 2011, she successfully discharged from the program.

In approximately June 2012, it was reported to the Iowa Department of Human Services (Department) that the parents were again actively using illegal substances. At that time, the mother was pregnant with B.S. The parents had sought treatment at a methadone clinic, and the parents were required to provide

---

[1] We will refer to R.S. as "the father" and to R.S. and B.T. collectively as "the parents," though we recognize R.S. is not the biological father of G.B. The parental rights of G.B.'s biological father, J.B., were not terminated and are not at issue in this appeal.

urine samples for testing as part of the program. The clinic's records revealed the father had been drug-tested nine times from December 2011 to approximately July 2012. He tested positive for marijuana on every drug screen, and he tested positive for methamphetamine seven out of nine times, including his drug screen in July 2012. The mother also tested positive for methamphetamine and benzylpiperazine in May 2012. In July, she gave birth to B.S., who was born addicted to methadone and had to spend a month in the neonatal intensive care unit due to withdrawals from the drug.

The mother then provided a urine sample in August that was negative for substances, including methadone. Because it was negative for methadone, it was believed she had used someone else's urine sample for the test. She was requested to provide another sample thereafter, and she refused. At the end of August 2012, the parents provided samples, and both tested positive for methamphetamine. The mother admitted she was abusing prescription medication, and she reported the father was selling prescription medication. The children were then removed from their care. B.S. and K.S. were placed in a friend's care, and G.B. was placed with his biological father. In April 2013, B.S. and K.S. were placed in the custody of their paternal third cousins. B.S., K.S., and G.B. have since remained in their relatives' care.

Services were offered to the parents, including substance abuse treatment and therapy, but they minimally participated. The parents' last provided urine samples in November 2012, and the father had tested positive for amphetamine. Both parents stopped attending their substance-abuse-treatment programs in December 2012. The father stopped contacting the Department, and he no

longer had visits with his children. The mother's visitation had decreased from two visits a week to one because she was inconsistent in her attendance. She too stopped contacting the Department, and the case worker did not hear from her from the end of January 2013 to the end of March. The mother also stopped meeting with her probation officer, and ultimately, her deferred sentence was revoked and a warrant issued for her arrest.

In April 2013, the State filed petitions for the termination of the parents' parental rights due to their lack of participation and progress in the case. Hearing on the petition was held in July 2013. At that time, the mother was in jail, having been arrested on the warrant a few days before the hearing. The court entered its ruling terminating their parental rights on multiple grounds in August, finding termination was in the children's best interest

Both parents now appeal.[2]

### II. Analysis.

In determining whether parental rights should be terminated under chapter 232, the juvenile court "follows a three-step analysis." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Step one requires the court to "determine if a ground for termination under section 232.116(1) has been established" by the State. *Id.* If the court finds grounds for termination, the court moves to the second step of the analysis: deciding if the grounds for termination should result in a termination of parental rights under the best-interest framework set out in section 232.116(2). *Id.* at 706-07. Even if the court finds "the statutory best-interest framework supports termination of parental rights," the court must proceed to the third and

---

[2] We note this case was transferred to this court on March 6, 2014.

final step: considering "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *Id.* at 707.

On appeal, we review the juvenile court's decision to terminate parental rights de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Although we are not bound by the court's factual findings, we do give them weight, particularly any credibility findings made. *Id.* If the juvenile court finds multiple grounds for termination exist under section 232.116(1), we need only to determine, on our de novo review, if there is clear and convincing evidence supporting one of those grounds in the record. *D.W.*, 791 N.W.2d at 707; *see also In re R.R.K.*, 544 N.W.2d 274, 276 (Iowa Ct. App. 1995).

Here, both parents separately contend the State failed to prove the grounds for termination found by the juvenile court and that termination of their parental rights is not in their children's best interests. Additionally, both argue their parental rights should not be terminated because section 232.116(3)(a) and (c) (2013) applies. We address their arguments in turn.

### A. Grounds for Termination.

Among other grounds, the juvenile court terminated both parents' parental rights pursuant to Iowa Code section 232.116(1)(*l*), which requires proof of several elements including proof that "[t]he parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts" and "the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home." Upon our de novo review, we find the State has met its burden as to each parent on this ground.

While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has stated "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing Iowa Code § 232.116(1)(e)). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification.

### 1. *The Father.*

The father only challenges the latter element of paragraph (*l*), and he points to his testimony at the hearing claiming, among other things, he was scheduled to begin treatment and that, "although he had been in denial, he was prepared to regain custody of his children." All of his actions prior to the end of March 2013 support the opposite conclusion, and by that time, the children had been out of his care for over six months. He did nothing to even start addressing his multiple issues until right before the petition for termination of his parental rights had been filed. He only completed a substance abuse evaluation a week before the termination hearing, and he had still not completed any kind of substance abuse treatment at the time of the termination hearing, three months after the petition was filed. He still had not provided any urine samples for drug screening, and he testified at the hearing that, if he provided a sample at that time, it would likely be positive for marijuana.

"We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children." *A.B.*, 815 N.W.2d at 776. Given that the father has tested positive for illegal substances since at least December 2011 and still had not completed any substance-abuse-treatment program by the time of the termination hearing, he has given us no reason to believe that he will now complete it. The evidence demonstrates that the father's substance abuse issue continued to place himself and others in danger despite his newfound interest in participating in services. While we commend the father for his recent efforts and hope he is successful, K.S. and B.S. are not equipped with pause buttons. We have reiterated many times that "[t]he crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re C.H.*, 652 N.W.2d 144, 151 (Iowa 2002) (citations and internal quotation marks omitted). Children "simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *A.B.*, 815 N.W.2d at 777 (citation and internal quotation marks omitted). Furthermore, the children's best interests are not served by "continu[ing] to keep them in temporary foster homes while the natural parents get their lives together." *Id.*

Although it appears the father loves K.S. and B.S., he was unable to distance himself from illegal substances to act as their father throughout the case. He showed no interest in being a sober father to these children until just before the termination hearing, and even then, he still had a long way to go to reach sobriety. Here, the father's actions throughout the case support the finding that, due to his abuse of illegal substances, the children will not be able to be

returned to his custody within a reasonable period of time. We therefore agree with the juvenile court that the State proved the ground for termination set forth in section 232.116(1)(*l*).

### 2. The Mother.

The mother directs us to her on-and-off participation in the methadone clinic's substance-abuse-treatment program as support she will now complete an inpatient treatment program, refrain from using illegal substances, and maintain sobriety. However, her actions throughout the case do not support her claim.

Here, the record shows the mother was pregnant at the time of the termination hearing, and she was still not following recommendations concerning use of methadone for the sake of that child's safety. In fact, the mother used her pregnancy as a tactic to demand methadone even though she was not following safety recommendations.

Like the father, we hope the mother is successful in her newest attempt at treatment for the sake of her youngest child, but the evidence in this case demonstrates that the mother's substance abuse issue continued to place her and others in danger. Moreover, the record shows the children cannot be returned to her custody within a reasonable period of time. We therefore agree with the juvenile court that the State proved the ground for termination set forth in section 232.116(1)(*l*).

### B. Best-Interest Framework.

As stated above, "[e]ven after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the children's best interests." *A.B.*, 815 N.W.2d at 776. For the reasons stated

above in finding the children could not be returned to the parents' custody within a reasonable period of time, we find the best interests framework in Iowa Code section 232.116(2) supports termination of their parental rights of these children. In that section, the legislature highlighted the children's safety, the best placement for furthering the long-term nurturing and growth of the children, and the physical, mental, and emotional condition and needs of the children as primary considerations. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010); *see also* Iowa Code § 232.116(2). The children's "safety and the need for a permanent home are now the primary concerns when determining [the children's] best interests." *In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially). Those best interests are to be determined by looking at the children's long-range as well as immediate interests. *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). We are to consider what the future likely holds for the children if the children are returned to the parents. *In re J.K.*, 495 N.W.2d 108, 110 (Iowa 1993). Insight for that determination is to be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that the parent is capable of providing. *In re L.L.*, 459 N.W.2d 489, 493-94 (Iowa 1990).

### 1. *The Father.*

The father merely asserts the juvenile court did not apply the best-interest framework in its decision to terminate his parental rights. The evidence demonstrates otherwise. Here, the juvenile court explained:

> The children's safety is the court's primary consideration. There are ongoing concerns about the safety of the children if returned to the care and custody of either parent. The children

> need a long-term commitment by adult(s) who can be appropriately nurturing, supportive for their growth and development, and that appropriately meet their physical, mental, and emotional needs. [B.S. and K.S.] are currently placed in a family that meets such criteria. [G.B.] is in the custody of his [biological father], who is appropriately meeting his needs. The children in interest's best interests require that the parental rights of [their mother] and [their father] be terminated.

We agree with the juvenile court, and, like that court, we conclude termination of the father's parental rights to K.S. and B.S. was in their best interests.

### 2. The Mother.

The mother contends termination of her parental rights was not in the children's best interests due to the close bond between her and the children. She states "the children were excited to see her during interactions, and they became upset when the visits ended." However, our review of the record indicates that statement was true when she regularly participated in visitation up to January 2013. The service provider testified that since January 2013, the mother's visits were very inconsistent and, at the time of the hearing, the mother had not seen her children for two months. The provider testified the mother's bond with the children was not strong at that time. The provider also testified that the mother stopped consistently preparing for the visits, such as bringing a diaper bag with her to the visit, after January 2013. Upon our de novo review of the record, we agree with the juvenile court that termination of the mother's parental rights was in the children's best interests as set forth under section 232.116(2).

### C. Potential Grounds Not to Terminate.

> Section 232.116(3) provides that the court need not terminate the relationship between the parent and child under certain circumstances. A finding under subsection 3 allows the court not to terminate. The factors weighing against termination in

> section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.

*In re A.M.*, ___ N.W.2d ___, ___, 2014 WL 685401, *12 (Iowa 2014) (internal citations and quotation marks omitted).

Here, each parent contends termination was not necessary because the children are in the custody of relatives, and because of the closeness of their relationship with the children. *See* Iowa Code § 232.116(3)(a), (c). However, we conclude upon our de novo review that neither the children's placement with relatives nor their bond with either parent weighs heavily enough to reverse the termination. Under the facts of this case, we cannot maintain the parent-child relationship where there exists only a remote possibility the mother and/or the father will become a responsible and consistent parent sometime in the unknown future. *See In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007) (describing strong bond between parent and child as militating factor, but not overriding consideration). These children deserve permanency now and should not have to wait any longer for the parents to put their needs first. *See D.W.*, 791 N.W.2d at 707-08. Termination will provide the children with the safety, security, and permanency they deserve. *See P.L.*, 778 N.W.2d at 41. The children are doing well in their relative placements. We believe the children's best interests are served by severing their legal tie with the parents, and we therefore decline to invoke section 232.116(3).

### *III. Conclusion.*

For the foregoing reasons, we affirm the juvenile court's termination of each parent's parental rights.

**AFFIRMED ON BOTH APPEALS.**