740 N.W.2d 648 (2007)
In the Interest of Z.H., Minor Child,
A.H., Father, Appellant.
No. 07-1048.
Court of Appeals of Iowa.
September 6, 2007.
*649 Alexandra M. Nelissen of Nelissen & Juckette, P.C., for appellant father.
Jesse Macro, Des Moines, for mother.
Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Corey McClure, Assistant County Attorney, for appellee State.
Kayla Stratton, Des Moines, for minor child.
Considered by HUITINK, P.J., and VOGEL and BAKER, JJ.
HUITINK, P.J.
I. Background Facts and Prior Proceedings
The father in this appeal, Anthony, has a mild form of mental retardation. His former wife also has various mental health issues. Their five-year-old son, Zachary, has been identified as a child with special needs.
The Iowa Department of Human Services (DHS) became involved in this case in 2004 when Zachary was two years old. At that time, Anthony and his wife were in the midst of divorce proceedings.[1] Zachary was living with his father and maternal grandmother. The State filed a child in need of assistance (CINA) petition claiming Zachary was not receiving critical care. At the pre-conference hearing, the court inquired as to whether either parent was of Native American heritage. Neither parent claimed they had any Native American ancestry.
Zachary was adjudicated CINA on September 27, 2004. He was allowed to stay with his father, but DHS eventually began removal proceedings when it received numerous reports of neglect. For example, *650 Zachary's school reported that he often came to school in soiled diapers and with a ravenous hunger. Anthony told one service provider that he sometimes allowed Zachary to bathe himself so that Zachary could have privacy. During one in-home visit, Zachary began to play with an electrical socket. Anthony did nothing to stop Zachary, so the service provider had to intervene. The guardian ad litem who visited Zachary also found a cigarette lighter amongst his toys. On April 2, 2006, Zachary was removed and placed in foster care.
Anthony made limited progress towards reunification during the next twelve months. He received numerous services, but providers reported concerns over his ability to learn, practice, and retain essential parenting skills. He required regular reminders to perform basic parental functions such as when to give Zachary his required medication. Anthony did not respond well to the provider's suggestions and was very defensive. One provider described him as belligerent. Anthony was also very uncooperative with his DHS caseworker and avoided communicating with him directly.
While he was uncooperative with services, Anthony did make significant strides in other areas of his life. He got a job at a local retail store and was promoted to a stock-supervisor. He also rented his own apartment and took steps to child-proof the home. Anthony eventually progressed to ninety-minute unsupervised visitations; however, he never progressed to the point where overnight visitations were appropriate.
The State filed the present petition to terminate Anthony's parental rights on April 25, 2007. At the pre-termination conference, Anthony informed the court that he had Native American ancestry. After questioning Anthony, the court determined Anthony "could not clearly identify the names of relatives and/or provide enough definitive information so notices could even be sent." The court gave Anthony seven days to provide written information about his Native American ancestry. Even though the court personally handed him information on the Indian Child Welfare Act (ICWA), Anthony did not provide further information on his heritage within the seven-day time limit. By the time of the termination hearing, Anthony still had not provided the court with any further information about his ancestry. Based on the limited facts at hand, the court found the ICWA was inapplicable and continued on with the hearing. The court ultimately terminated his parental rights pursuant to Iowa Code sections 232.116(1)(d) (child CINA for neglect, circumstances continue despite receipt of services) and (f) (child four or older, child CINA, removed from home for twelve of last eighteen months, and child cannot be returned home) (2007).
On appeal, Anthony[2] contends (1) DHS did not make reasonable efforts to find and approve an individual who could help Anthony provide support and supervision; (2) there was not clear and convincing evidence to terminate his parental rights under Iowa Code sections 232.116(1)(d) or (f); (3) termination was not in Zachary's best interests; and (4) the court failed to comply with the federal ICWA and the Iowa ICWA.
II. Standard of Review
We review termination of parental rights de novo. In re J.E., 723 N.W.2d 793, 798 (Iowa 2006). Grounds for termination must be proven by clear and convincing *651 evidence. Id. Our primary concern is the best interests of the child. Id.
III. Merits
A. Reasonable Efforts
Throughout these proceedings, Anthony has tried to have someone else available to help him care for Zachary. On appeal, Anthony claims he "was successful in the past in raising his child with the assistance from a `live in'" and contends the State did not make "reasonable efforts" to assist him "in finding and/or approving an individual who could provide support and supervision . . . which could have aided in the reunification of the family."
We disagree. First, there is no evidence Anthony ever successfully raised his child with the assistance of a "live in." Zachary was adjudicated a child in need of assistance because Anthony could not provide for his care. The court allowed Zachary to remain with Anthony, and Anthony utilized both his mother and a "nanny" to help him care for Zachary. Even though he received this assistance, Zachary was removed from his care amidst numerous reports of neglect.
Second, we find the State's efforts to assist Anthony were, under the circumstances, reasonable. As mentioned above, Anthony initially utilized a nanny to help him care for Zachary. When he inquired about hiring another nanny, DHS performed a background check and found this person acceptable. For unknown reasons, Anthony decided not to use this person. Anthony suggested another individual, but this person failed the DHS background check. Anthony suggested a third person, but DHS found this person unacceptable because she was not cooperative with the foster mother. We find no merit to Anthony's argument that the State's efforts were not reasonable simply because DHS rejected two of the three people he suggested.
B. Statutory Grounds
Anthony contends the evidence does not support termination under sections 232.116(1)(d) or (f). Because we find statutory grounds for termination under section 232.116(1)(f), we need not address the arguments pertaining to the other statutory ground listed by the district court. See In re S.R., 600 N.W.2d 63, 64 (Iowa Ct.App.1999) ("When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm.").
Section 232.116(1)(f) provides that parental rights can be terminated if the State proves by clear and convincing evidence that the child is four years of age or older; the child has been adjudicated CINA; the child has been removed from the physical custody of his parents for at least twelve of the last eighteen months or for the last twelve consecutive months and any trial period at home has been less than thirty days; and there is clear and convincing evidence that at the present time the child cannot be returned to the custody of the parents as provided in section 232.102. The first three elements were clearly proved and are not in dispute. Anthony claims there is insufficient evidence that Zachary could not be returned to his care.
Based on our de novo review of the record, we find there is clear and convincing evidence that Zachary cannot be returned to his care at the present time. The record reflects that Anthony has made only marginal improvement in his parenting skills. During one visit he gave Zachary a bubble bath even though he knew Zachary had eczema and was not supposed to have scented soaps or lotions on his *652 skin. He also neglected to give Zachary his medicine at the appropriate time during his visits. In the opinion of both the care provider that supervises Anthony's interactions with Zachary and the DHS caseworker, Anthony is not able to meet all of Zachary's needs. Anthony performs most tasks when he is told to do so, but he has not shown the ability to perform necessary tasks without specific direction. While he has progressed to short periods of unsupervised visitation, immediately followed by short periods of supervised visitation, we find there is sufficient proof that he could not provide for Zachary's needs on a consistent, long-term basis. See In re L.L., 459 N.W.2d 489, 495 (Iowa 1990) ("Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."). Hence, we find there is clear and convincing evidence that Zachary cannot be returned to his father's care at this time.
C. Best Interests
Anthony also contends termination is not in Zachary's best interests. He claims his strong bond with Zachary, when coupled with the fact that he is flourishing in his current foster home, clearly demonstrates that termination is not necessary at this time.
A strong bond between parent and child is a special circumstance which militates against termination when the statutory grounds have been satisfied. Iowa Code § 232.116(3). However, this is not an overriding consideration, but merely a factor to consider. In re N.F., 579 N.W.2d 338, 341 (Iowa Ct.App.1998). In determining Zachary's best interests, we look to both his long-term and immediate needs. J.E., 723 N.W.2d at 798.
We cannot ignore Anthony's insufficient progress towards reunification. After more than two years of services, Anthony still does not have sufficient parenting skills to care for Zachary. The strong bond between Anthony and Zachary is simply not strong enough to forestall termination in this case. See id. at 801 (Iowa 2006) (Cady, J., concurring specially) ("A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests."). Similarly, we find it is not in Zachary's best interests to delay termination simply because, as Anthony claims on appeal, Zachary is "not suffering" as a result of the current living situation and visitation schedule. Our legislature has established a twelve-month period for parents to demonstrate they can parent. Iowa Code § 232.116(1)(f); see In re C.K., 558 N.W.2d 170, 175 (Iowa 1997). This time period has elapsed, and Anthony still does not have the ability to provide for Zachary's daily needs. On the other hand, Zachary's foster mother has experience with special needs children and she is willing to adopt him. To continue to keep him in a temporary or even a long-term foster home is not in his best interests, especially when he is adoptable. See C.K., 558 N.W.2d at 175. We agree with the juvenile court's finding that termination of Anthony's parental rights is clearly in Zachary's best interests.
D. Indian Child Welfare Act
Anthony claims the court erred because it failed to comply with the terms of the federal ICWA and the Iowa ICWA.
The federal (ICWA) states:
In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the . . . termination of parental rights . . . shall notify the parent . . . and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings *653 and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, that the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.
25 U.S.C. § 1912(a) (emphasis added). The Iowa ICWA contains similar notice provisions if the court has reason to know that an Indian child is the subject of the proceedings. See Iowa Code § 232B.5.
The operative question in this case is whether the court had reason to know Zachary was an Indian child.[3] Iowa Code section 232B.5(3) provides, in pertinent part:
[t]he court . . . shall be deemed to know or have reason to know that an Indian child is involved whenever any of the following circumstances exist:
a. A party to the proceeding or the court has been informed by any interested person . . . that the child is or may be an Indian child.
Although our supreme court has indicated "it is better to err on the side of giving notice to the tribe and examining thoroughly whether the child is an Indian child," In re R.E.K.F., 698 N.W.2d 147, 149 (Iowa 2005), common sense supports the district court's decision not to go forward with the notice provisions in this case. The threshold of giving notice under the statute is low, but it is not without limits.
When addressed by other states, "reason to know" has been interpreted to mean "reason to believe."
Federal Guidelines on ICWA-which urge a liberal construction of ICWA to further its preferences-have interpreted "reason to know" to mean "reason to believe." In turn, California courts have adopted "reason to believe" as the relevant standard and have set a low threshold to trigger the notice requirements of the federal law. In other words, the Indian status of a dependent child need not be certain. A minimal showing that the child may be an Indian child is all that is required.
In re Joseph P., 140 Cal.App.4th 1524, 45 Cal.Rptr.3d 591, 595 (2006) (internal citations omitted). Where, however, there are merely vague assertions of possible Native American ancestry, there exists no "reason to believe" and such vague assertions are insufficient to trigger the notice requirements in either act. See, e.g., In re Guardianship of J.O., 327 N.J.Super. 304, 743 A.2d 341 (App.Div.2000); In re A.L., 623 N.W.2d 418 (N.D.2001); In re Arianna R.G., 259 Wis.2d 563, 657 N.W.2d 363 (2003).
Anthony's vague statement about his Native American heritage was not injected into this proceeding until the eve of termination, after the statutory time period for termination had elapsed and after he had previously denied having a Native American *654 ancestry. When the court questioned Anthony about his heritage, he was unable to clearly identify the names of relatives with Native American ancestry or identify any tribal affiliation. Recognizing Anthony's mental health issues, the court gave Anthony and his attorney additional time to provide more specific information about his Native American ancestry. Both were unable to do so and neither asked the court for more time to gather this information.
We find the court did not err when it found the federal and Iowa ICWA inapplicable and went forward with the termination proceedings. The court correctly considered the unique circumstances surrounding Anthony's claim of Native American ancestry when it decided whether Zachary could possibly be an Indian child. Anthony's previous denial of his Native American ancestry, the timing of his new claim, and his inability to provide the court with any specific information as to why he now believed he was of Native American ancestry did not give the court reason to believe Zachary was an Indian child. Accordingly, the juvenile court was not required to delay termination proceedings in order to comply with the procedural notice requirements of either act.
IV. Conclusion
There is no doubt that Anthony loves Zachary. However, Anthony cannot adequately provide for his care. While the law demands a full measure of patience with a troubled parent attempting to remedy a lack of parenting skills, a child need not endlessly await for his parent to develop those skills, especially once the statutory period has elapsed. See In re A.C., 415 N.W.2d 609, 613-14 (Iowa 1987). We find termination is appropriate in this case.
AFFIRMED.
NOTES
[1] Both parents were granted custody of Zachary, but Anthony was granted primary physical care.
[2] The mother participated in the termination proceedings, but she is not a party to this appeal. She also did not claim Zachary was an Indian child.
[3] The federal ICWA defines an Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). The Iowa ICWA defines an Indian child as "an unmarried Indian person who is under eighteen years of age or a child who is under eighteen years of age that an Indian tribe identifies as a child of the tribe's community." Iowa Code § 232B.3(6).