## IN THE COURT OF APPEALS OF IOWA

No. 14-0704
Filed July 16, 2014

**IN THE INTEREST OF C.B.,**
**Minor Child,**

**S.B., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Story County, Steven P. Van Marel, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Katie L.N. Madson of Terrill, Richardson, Hostetter & Madson Law Offices, Ames, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Stephen Holmes, County Attorney, and Thomas G. Kunstle, Assistant County Attorney, for appellee State.

Penny Reimer of Cooper, Goedicke, Reimer & Reese, P.C., West Des Moines, for intervenors.

Shannon Leighty of the Public Defender's Office, Nevada, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**VAITHESWARAN, P.J.**

A mother appeals the termination of her parental rights to her child, born in 2001. She contends (1) the grounds for termination cited by the district court are not supported by clear and convincing evidence and (2) the district court failed to give proper consideration to the statutory exceptions to termination.

*I.* The district court terminated the mother's parental rights pursuant to several statutory grounds. We may affirm if we find clear and convincing evidence to support any of the cited grounds. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). On our de novo review, we believe termination is warranted under Iowa Code section 232.116(1)(f) (requiring proof of several elements, including proof that child could not be returned to parent's custody).

The mother had a decade-long relationship with the Department of Human Services based on mental health issues that overwhelmed her. Her parental rights to twins were terminated years ago and, on appeal, this court affirmed the termination decision, citing the mother's "recurring cycle of compliance and noncompliance with services." *See In re A.K.*, No. 05-1975, 2006 WL 335074, at *2 (Iowa Ct. App. Feb. 15, 2006).

The present proceedings reveal the same cycle. The department became involved when the mother failed to attend to a third child's dental needs after the child complained of pain in her mouth for several months. The mother voluntarily placed the child with the mother's aunt and uncle. The State subsequently filed a child-in-need-of-assistance action and the child underwent root canal treatment to address her dental pain. The child remained in the care of her great aunt and uncle through the termination hearing sixteen months later.

After the child-in-need of assistance action was filed, the child tested positive for the presence of methamphetamine in her hair. The department determined the child was most likely exposed to the drug while in the care of her mother, who began using drugs as a teenager and continued abusing them for twenty years.

The mother declined two opportunities to complete inpatient drug treatment, citing her traumatic memories of childhood institutionalization. While she participated in individual substance-abuse counseling, her attendance was not consistent for the first year of the proceedings.

The mother's visits with the child were also sporadic. She had five supervised visits during a seven month period and disengaged from all services for approximately four months. When she later reconnected, the department decided to limit her contact with the child to weekly telephone calls.

As in the previous action, the mother's decision to reengage in services came on the heels of the State's decision to seek termination of her parental rights. Her attendance at substance abuse counseling sessions regularized just three months before the termination hearing, as did her contacts with the department. While a department caseworker familiar with the mother over a period of twenty years acknowledged the mother was "doing well right now," she also testified that it would be a struggle for the mother to maintain her sobriety.

At the end of the day, the mother's own testimony confirms that immediate reunification was not possible. When asked for a time frame to have the child returned, the mother stated, "I cannot give a date. To be honest I know if it was today, that would be impossible. I can be honest enough about that. Gradually,

you know, it would take some—a moment for her and both for me . . . to reintegrate." Later, she testified "I know that [the child] would not come back right away and everything."

Based on this record, we conclude the State proved by clear and convincing evidence that the child could not be returned to the mother's custody.

*II.* "[B]efore terminating a parent's parental rights, the court must consider if any of the exceptions contained in section 232.116(3) allow the court not to terminate." *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The mother focuses on three exceptions: (1) the fact that a relative had legal custody of the child, (2) the fact that the child wished to remain in contact with the mother, and (3) the bond between mother and child. *See* Iowa Code §§ 232.116(3) (a), (b), (c).

The record on the first exception is more complicated than it seems. When the child is in the care of a relative, courts may find a guardianship more appropriate than termination to facilitate ongoing contact between parent and child; however, placement with a relative is not legally preferable to a termination of parental rights. *See In re L.M.F.*, 490 N.W.2d 66, 67 (Iowa Ct. App. 1992); *see also* Iowa Code § 232.117(3)(a) (providing a "court need not terminate the relationship between parent and child if . . . a relative has legal custody of child.") In this case, the mother's aunt testified she would have no qualms in permitting the child to have contact with the mother, assuming the mother's sobriety and stability. However, she also stated she and her husband were not in a position to serve as permanent caregivers for the child because they were both sixty-eight years old and had health issues. In fact, they expected the child to be moved from their home just six weeks after the termination hearing. Other relatives who

expressed an interest in assuming the child's care stated they wished to have the mother's rights terminated in lieu of creating a guardianship. While their wishes are not controlling, the mother's lack of progress is. *In re C.K.*, 558 N.W.2d 170, 174-76 (Iowa 1997). During these proceedings, her conduct resulted in the elimination of her in-person visits with the child. Under these circumstances, the creation of a guardianship was not warranted.

This discussion leads directly to the second exception—the child's wishes. The child advised the court that she would like to maintain some form of contact with her mother. The child's therapist confirmed that this was consistently the child's position and that, if contact were cut off, it "could" have a negative impact on the child's life. At the same time, she stated that the child "would benefit by being in a stable home like she has been in the past eighteen months."

The child's request for some form of informal contact with the mother is understandable given her age and the time spent in her mother's care. That said, the child also expressed feelings of abandonment based on her lengthy stays outside the home and the mother's disappearance from her life for several months. Because the mother was afforded ample opportunity to stabilize her life, we conclude termination of the mother's parental rights to the child was in the child's best interests notwithstanding the potential that termination might result in severance of the child's contact with the mother.

We are left with the final exception—the bond between mother and child. Our discussion above underscores the strong bond they shared. But the primary consideration is the child's safety. *P.L.*, 778 N.W.2d at 40. The mother's failure to make significant progress towards sobriety compromised the child's safety.

This factor overrode the bond.  *See In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007).

We affirm the termination of the mother's parental rights to this child.

**AFFIRMED.**