**IN THE COURT OF APPEALS OF IOWA**

No. 14-0935
Filed August 13, 2014

**IN THE INTEREST OF C.C.,**
**Minor Child,**

**J.C., Father,**
**Appellant.**
_____

Appeal from the Iowa District Court for Polk County, Constance C. Cohen,

Associate Juvenile Judge.

A father appeals from the termination of his parental rights.  **AFFIRMED.**

Thomas P. Graves of Graves Law Firm, P.C., Clive, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, John P. Sarcone, County Attorney, and Kevin Brownell,

Assistant County Attorney, for appellee State.

Kayla Stratton of the Des Moines Juvenile Public Defender, Des Moines,

attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

A father appeals from the order terminating his parental rights. Upon our de novo review, we affirm.

### I. *Background Facts and Proceedings.*

J.C. is the father and A.A. is the mother of C.C., born in May 2012. The father has a long history of mental health, substance abuse, and alcohol abuse issues, as well as a history of violence and domestic abuse. The father is currently incarcerated, having entered *Alford* pleas to two felony charges of willful injury causing serious injury and domestic abuse assault impeding air flow causing bodily injury following an incident with the mother in January 2013. Specifically, the mother was severely burned with a pot of boiling water that the father either poured on her or recklessly knocked off the stove in her direction. The father also choked the mother. At the time of the incident, the father was abusing substances and alcohol, and the father had not been taking his mental health prescription medication. The child was in the home at the time of the incident, but both parents reported the child was asleep in a different room and did not witness the incident. A criminal no-contact order was entered against the father following the incident preventing him from having direct contact with the child. The father has not seen the child since February 2013.

The child came to the attention of the Department of Human Services (DHS), and the child was later adjudicated a child in need of assistance (CINA). Early on in the case, the parents repeatedly violated the no-contact order, and the child was removed from the mother's custody. However, after the child's removal, the mother ceased contact with the father. Since that time, the mother

has begun taking the no-contact order seriously and has participated in services provided by the DHS to establish reliable parenting skills. She has also enrolled in and begun participating in individual therapy, which she intended to continue. Due to the mother's progress, the DHS recommended the child be returned to the mother's care.

However, the father was incarcerated with an expected discharge date of 2019. The State filed a petition for termination of the father's parental rights. It also requested the mother's case be reviewed and the child returned to her custody as recommended by the DHS.

A hearing on the State's petition was held in May 2014. There, the father reported he had participated in a batterers' education course as well as a number of other courses in prison. He testified he intended to respect the no-contact order after he was released, but he would like the order to be modified so he could have some contact with the child. He testified he had been attending NA and AA in prison, and he would attend substance abuse treatment and stay on his prescribed medications if released on parole. He stated he believes he has changed and can be a positive influence in the child's life. However, the father admitted he had not paid any type of child support. He testified he believed he would be discharged on parole in the near future, though it was not guaranteed.

Following the hearing, the court entered its order terminating the father's parental rights pursuant to Iowa Code section 232.116(1) paragraphs (b), (d), (e), and (h) (2013). Additionally, the court found the child should be returned to the mother's custody under the supervision of the DHS.

The father now appeals.

## II. *Analysis.*

In determining whether parental rights should be terminated under chapter 232, the juvenile court "follows a three-step analysis." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Step one requires the court to "determine if a ground for termination under section 232.116(1) has been established" by the State. *Id.* If the court finds grounds for termination, the court moves to the second step of the analysis: deciding if the grounds for termination should result in a termination of parental rights under the best-interest framework set out in section 232.116(2). *Id.* at 706-07. Even if the court finds "the statutory best-interest framework supports termination of parental rights," the court must proceed to the third and final step: considering "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *Id.* at 707.

On appeal, we review the juvenile court's decision to terminate parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Although we are not bound by the court's factual findings, we do give them weight, particularly any credibility findings made. *Id.* If the juvenile court finds multiple grounds for termination exist under section 232.116(1), we need only to determine, on our de novo review, if there is clear and convincing evidence supporting one of those grounds in the record. *D.W.*, 791 N.W.2d at 707; *see also In re R.R.K.*, 544 N.W.2d 274, 276 (Iowa Ct. App. 1995); *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010).

Here, the father contends the State failed to prove the grounds for termination found by the juvenile court and that his parental rights should not be

terminated because section 232.116(3)(a) applies. We address his arguments in turn.

### A. *Grounds for Termination*.

Among other grounds, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(h), which provides parental rights may be terminated if the court finds by clear and convincing evidence that (1) the child is three years of age or younger, (2) has been adjudicated a CINA, (3) has been removed from the physical custody of his parents for at least six months of the last twelve months, and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parents at the present time. The father concedes the first three elements were proved. He does not argue the child could be returned to his care. Instead, he claims the last element was not proved "because the child has been returned to [the custody of] one of the parents, the mother." His claim implies the provisions of subsection (h) do not apply unless the rights of both parents are being terminated.

Iowa Code section 4.1(17) explains how to read such statutory terms: "Unless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular." Applying section 4.1(17) to section 232.116(1), both the Iowa Supreme Court and our court have allowed termination of the rights of a noncustodial parent when the children are placed with the other parent. *See In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992); *In re C.W.*, 554 N.W.2d 279, 282 (Iowa Ct. App. 1996). The statutes permit the termination of one parent's rights. *See C.W.*, 554 N.W.2d at 282. This construction is

consistent with the statutory framework and best interests of the children. *N.M.*, 491 N.W.2d at 155.

At the time of the termination hearing, the child had been out of the father's care for well over six months. The child had not seen his father since February 2013, and it was anticipated the father would not be discharged from prison until 2019, though the father believed he may be discharged on parole in the near future. Nevertheless, it is clear the child could not have been returned to the father's custody at the time of the termination-of-parental-rights hearing. Although conviction of a crime and resulting imprisonment do not necessarily result in termination of parental rights, incarceration, by the same token, cannot justify a parent's lack of relationship with the child. *See In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). Additionally, we agree with the juvenile court's findings:

> Even if [the father] were not incarcerated, [his] significant history of drug and alcohol abuse as well as violence would require a significant period of time within which to test his success in the community. [The father] believes that he will be discharged on a special parole program in the very near future, but there is no guarantee. The court must give substantial weight to [the father's] treatment history when he was available in the community in order to gauge the likelihood that he will be in a position to parent [the child] in the foreseeable future. Although he is involved in [twelve]-step meetings at prison, his history of compliance with and benefit from treatment in a less restrictive setting does not bode well for future conduct.
> . . . .
> . . . Inasmuch as he has failed to make substantial progress in a confined and highly structured setting, there is no confidence that [the father] will be able to be successful in the community once he is released and must deal with the challenges of the temptations to abuse substances and mental health. Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential

support system to maintain sobriety, there is little hope of success in parenting.

The evidence here clearly and convincingly establishes the father will not be able to participate in the child's life for a significant period of time. We therefore agree with the juvenile court that the evidence presented at the termination hearing demonstrated the child could not be returned to his care at that time or in the foreseeable future. Upon our de novo review, we find termination of the father's parental rights was proper under section 232.116(1)(h) despite the child being in the custody of the mother. Accordingly, we affirm on this issue.

### B. *Potential Grounds Not to Terminate.*

> Section 232.116(3) provides that the court need not terminate the relationship between the parent and child under certain circumstances. A finding under subsection 3 allows the court not to terminate. The factors weighing against termination in section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.

*A.M.*, 843 N.W.2d at 113 (internal citations and quotation marks omitted).

Here, the father contends termination was not necessary because the child remained in the custody of a relative—the child's mother. *See* Iowa Code § 232.116(3)(a). However, one parent's custody does not preclude termination of the noncustodial parent's rights if that is in the best interests of the child. *See N.M.*, 491 N.W.2d at 155; *C.W.*, 554 N.W.2d at 282. To be sure, the language the father cites is permissive in nature. *See* Iowa Code § 232.116(3)(a). But the overall guiding consideration in these proceedings is the best interest of the child, considering "the child's safety, the best placement for furthering the long-term

nurturing and growth of the child, and the physical, mental, and emotional condition and needs of the child." *See P.L.*, 778 N.W.2d at 37 (discussing section 232.116(2)) (internal quotation marks omitted).

Under the facts of this case, termination of the father's parental rights was proper despite the child being in the care of his mother. We cannot maintain the parent-child relationship where there exists only a remote possibility the father will become a responsible and consistent parent sometime in the unknown future. *See In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007) (describing strong bond between parent and child as militating factor, but not overriding consideration). The father is presently incarcerated, and this child deserves permanency now and should not have to wait any longer for the father to put his needs first. *See D.W.*, 791 N.W.2d at 707-08. Termination will provide the child with the safety, security, and permanency he deserves. *See P.L.*, 778 N.W.2d at 41. We therefore believe the child's best interests are served by severing his legal tie with the father, and we therefore decline to invoke section 232.116(3).

### III. Conclusion.

For the foregoing reasons, we affirm the juvenile court's termination of the father's parental rights.

**AFFIRMED.**