**IN THE COURT OF APPEALS OF IOWA**

No. 14-1389
Filed October 15, 2014

**IN THE INTEREST OF C.T.,**
**Minor Child,**

**M.S., Mother,**
**Appellant.**
_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle, District Associate Judge.

The mother appeals the termination of her parental rights to her child, C.T. **AFFIRMED.**

Christopher O'Brien, Fort Dodge, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Ricki Osborn, County Attorney, and Jennifer Benson, Assistant County Attorney, for appellee State.

Sarah Smith of Bennett, Crommins & Smith, Fort Dodge, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Bower, JJ.

**VOGEL, J.**

The mother appeals the termination of her parental rights to her child, C.T.[1] She asserts reasonable efforts were not undertaken to reunite her with C.T., and that she should be granted an additional six months to work toward reunification. She further argues termination is not in C.T.'s best interest due to the parent-child bond. We conclude the Iowa Department of Human Services (DHS) offered the mother adequate services, and given her chronic and unrelieved abuse of methamphetamine, an additional six months would not resolve her substance abuse and mental health issues. Furthermore, because of this methamphetamine addiction, termination is in C.T.'s best interest. Consequently, we affirm the juvenile court's order terminating the mother's parental rights.

C.T. was born in October 2013, and was removed from the mother's care just days later. She was removed because the mother had tested positive for methamphetamine, following a suicide attempt by drug overdose. C.T. was placed in foster care.

On October 21, the mother entered an inpatient substance abuse treatment center at the YWCA, and following a stay in the hospital due to her depression, returned to the YWCA on November 1, 2013. C.T. was returned to the mother's care for a trial visit on November 15. The mother left the YWCA on January 13, 2014, intending to receive intense outpatient treatment from the YWCA. However, following the mother's departure from the YWCA, C.T. was removed from the mother's care and placed with the same foster family, where

---

[1] The father's parental rights to C.T. were also terminated; however, he does not appeal.

she remained at the time of the termination hearing. The mother relapsed on both methamphetamine and alcohol on January 17, and was discharged from the YWCA on January 24.

The mother completed a substance abuse evaluation at Community and Family Resources (CFR) on January 28, 2014, and attended two treatment sessions. She was discharged on February 17, having tested positive for methamphetamine during treatment. The mother also informed her probation officer she used methamphetamine on March 16 and March 20, 2014. Though she was scheduled to enter inpatient substance abuse treatment at Jackson Recovery, she failed to do so.

The mother has been diagnosed with bipolar disorder and polysubstance dependence. She has not consistently addressed these issues with therapy or medication—her last therapy appointment was February 12, 2014, and she does not take her prescribed medication. Upon entering Family Treatment Court, she was required to complete a plan for treatment and to refrain from contact with C.T.'s father.[2] She was discharged from this program for failure to comply with these requirements.

The mother has received various services since October 2009, when three of her older children came to the attention of DHS due to domestic violence and drug use in the home. They were removed from the mother's care in 2010 and her rights were terminated in June 2011, following a hearing at which she failed

---

[2] The mother and father have a history of domestic violence. On April 21, 2014, a physical altercation occurred and the father pleaded guilty to false imprisonment. A no contact order was entered, which has been violated by both parties.

to appear. Her rights to two of C.T.'s full siblings were terminated in 2012 and 2013.

During the pendency of this proceeding the following services were offered to the mother: CFR services, both inpatient and outpatient; YWCA services, inpatient and outpatient; Prairie Ridge substance abuse treatment; treatment at Jackson Recovery; Berryhill Center for Mental Health; counseling sessions; Parent Partner; Family Treatment Court; supervised visitation; family safety, risk, and permanency services; and Families First. The mother's last visit with C.T. was on April 10, 2014, and because of her failure to keep in contact with service providers, she has not seen C.T. since that date.

C.T. was adjudicated a child in need of assistance on December 12, 2013. Due to the mother's unresolved mental health and substance abuse issues, the State petitioned to terminate her parental rights on June 13, 2014. A hearing was held on August 6, 2014, which the mother did not attend, ostensibly due to the fact she had an outstanding warrant for her arrest. The juvenile court terminated her parental rights pursuant to Iowa Code section 232.116(1)(b), (e), (g), (h), and (*l*) (2013). The mother appeals, not contesting any of the grounds supporting termination, but arguing she did not receive adequate services and therefore she should be granted an additional six months to work toward reunification. She further asserts termination is not in C.T.'s best interest due to the bond she shares with C.T.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.*

The mother claims the services offered were "piecemeal solutions" and failed to give her "the unique treatment her condition so plainly required." Upon review of the record, we conclude the mother received adequate services. Beyond the fact she received the services listed above, she made multiple requests to change DHS workers and service providers, which were granted. While she fails to state what additional services she should have received, we note she was given more than adequate opportunity to address both her mental health and substance abuse issues. The fact she declined to take full advantage of the majority of the services offered does not then put the onus on DHS to offer her even more services.

Moreover, we do not conclude the mother should be granted an additional six months to work toward reunification. She has been in receipt of services since 2009 and has made little to no progress in addressing either her mental health or substance abuse issues. As the juvenile court noted:

> With all of these services available to them, no progress has been made by the parents. In the family team meeting held on December 3, 2013, and throughout their time in Family Treatment Court, the expectations were that the parents remain clean and sober, participate and successfully complete substance abuse treatment, maintain visitation with the child, and address mental health issues. Neither parent has been cooperative with services, the DHS workers, or the providers. [The mother] last had contact with the DHS worker on April 17, 2014, and with the FSRP provider on June 4, 2014.

The record supports the juvenile court's assessment, and it is clear granting the mother an additional six months will do nothing except prolong the uncertainty in C.T.'s life. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for

their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2).

Furthermore, termination is in C.T.'s best interest. Despite receiving services since 2009, the mother's mental health and substance abuse issues have remained unresolved. The juvenile court found the mother's failure to improve her ability to provide for C.T.'s safety, long-term nurturing, and growth supports the conclusion that termination of parental rights serves C.T.'s best interests. We agree, considering that, in determining the future actions of the parent, her past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Not only will more time not correct this situation, but it is in C.T.'s best interest that she not be placed with a mother who is addicted to methamphetamine and refuses to receive treatment for her bipolar disorder. *See* Iowa Code § 232.116(2). Though the mother claims she and C.T. share a bond, the short time they were together is not a consideration that precludes termination, particularly given the mother has not seen C.T. since April 10, 2014. *See* Iowa Code § 232.116(3)(c); *In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007) (noting the parent-child bond is a consideration but not an overriding one). It is also encouraging that C.T. is developmentally on track and is in a pre-adoptive home. Consequently, termination of the mother's parental rights is in C.T.'s best interest, and we affirm the order of the juvenile court.

**AFFIRMED.**