**IN THE COURT OF APPEALS OF IOWA**

No. 14-1916
Filed January 28, 2015

**IN THE INTEREST OF A.H.,**
**Minor Child,**

**C.A., Mother,**
**Appellant,**

**T.H., Father,**
**Appellant.**
_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

A mother and father separately appeal the juvenile court's termination of their respective parental rights in their minor child. **AFFIRMED ON BOTH APPEALS.**

Judy Johnson of Borseth Law Office, Altoona, for appellant mother.

Barbara O. Hoffman, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Jon E. Anderson, Assistant County Attorney, for appellee State.

Joseph Strong of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**POTTERFIELD, J.**

A mother and father separately appeal the juvenile court's termination of their respective parental rights in their minor child.

**I. Factual and Procedural Background**

The child was born on April 20, 2013. Concerns soon arose regarding the parents' substance abuse and incidents of domestic violence in the home. The child was removed from the parents' custody on June 28, 2013. The child was placed in the care of her maternal grandparents. The father was arrested the following month and has remained in the custody of the State since that time. He is currently on parole and resides at the Salvation Army Rehabilitation Center.

Since the child was removed from the parents' custody, the mother has oscillated between periods of sobriety and substance abuse. At times she will comply with substance testing and demonstrate her sobriety, but at other times she will avoid testing or return results positive for methamphetamine or other substances. In September and October 2013, she underwent intensive inpatient treatment for substance abuse. On March 1, 2014, the mother was arrested for theft. On March 12, 2014, she was admitted to Broadlawns Emergency Crisis Unit as she was experiencing hallucinations. She tested positive for marijuana and amphetamines. In June 2014, she stopped attending visitations and fell out of contact with her parents. The mother had no contact with service providers until August 2014. She was asked to submit to a drug screen, and she refused. She consented to a screen a month later.

Following a review hearing in August 2014, the State petitioned the juvenile court to terminate both parents' parental rights. The court terminated

parental rights in the child on November 4, 2014. Both the mother and father appeal.

**II. Standard and Scope of Review**

We review the juvenile court's termination order de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

**III. Discussion**

Termination of parental rights follows a three-step analysis. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). First, the juvenile court must establish a statutory ground upon which it bases its termination order; second, the court must determine whether termination is in the child's best interest; third, it must consider whether any mitigating factors should nevertheless prevent it from terminating the parents' rights. *Id.* at 706–07.

*A. Grounds for Termination*

The mother and father both assert the statutory grounds upon which the juvenile court based its termination order are not supported by clear and convincing evidence. "We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination." *Id.* at 706. "Evidence is 'clear and convincing' when there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* We may affirm the termination order if we find any one of the grounds relied upon is supported by clear and convincing evidence. *See id.* at 707.

One of the statutory grounds relied upon by the juvenile court was Iowa Code section 232.116(1)(e) (2013).[1] Both the mother and father claim they have maintained significant and meaningful contact with the child contrary to the juvenile court's conclusions of law.

We find there is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child. As to the father's claim, the district court noted he had attended only a single visitation in the two months prior to the termination order. He visited the child ten times total in fifteen months. The father's limited contact with the child does not reflect a genuine effort to establish or maintain a place of importance in the child's life or an affirmative assumption by the father of the duties encompassed by the role of being a parent. We affirm the district court's finding of clear and convincing

---

[1] Iowa Code section 232.116(1)(e) provides:

> [T]he court may order the termination of both the parental rights with respect to a child and the relationship between the parents and the child [if] . . . [t]he court finds that all of the following have occurred:
>
> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
>
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months . . . . "[S]ignificant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

It is uncontested the first two elements of this statutory provision have been satisfied. Instead, both parents assert they have maintained significant and meaningful contact with the child.

evidence to support termination of the father's parental rights under section 232.116(1)(e).

As to the mother's claim, the months leading to the termination order accurately reflect the mother's overall inconsistency in maintaining a meaningful relationship with the child. Though she had been visiting the child on a regular basis in early 2014, she abruptly stopped attending visitations and communicating with her parents and service providers in June 2014. Once she was located, DHS noted in a report to the court that she "appeared to be under the influence of methamphetamine."

At times, the mother appears to desire to improve her parenting, and she takes full advantage of available services. However, the episode in June is just one example in which the mother suddenly abandoned those efforts, stopped visiting the child, or relapsed into substance abuse. These periods of abandonment belie the mother's contention that she has maintained significant and meaningful contact with the child. Intermittent and inconsistent periods of contact do not coalesce into significant and meaningful contact.

There is clear and convincing evidence supporting the juvenile court's conclusion that it may terminate both parents' parental rights under section 232.116(1)(e). We need not consider the juvenile court's reliance on other grounds.

*B. Best Interests of the Child*

Both parents assert it is not in the child's best interests to terminate their parental rights. We give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to

the physical, mental, and emotional condition and needs of the child." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (citations omitted). "Insight for determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." *Id.* at 778.

We agree with the juvenile court that it is not in the best interests of the child for the parents to retain their parental rights. The father's scant contact with the child during most of her life indicates he has little interest in ministering to the physical, mental, and emotional needs of the child. The father suggests his involvement with the child will improve once he is released from incarceration. However, he "cannot use his incarceration as a justification for his lack of relationship with the child. This is especially true when the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with [the] child." *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa Ct. App. 1993).

The mother's inconsistent attitude toward caregiving indicates the child will be exposed to neglect or harm during the mother's periods of relapse. Additionally, we note the juvenile court already afforded both parents a six-month extension period to correct their lack of involvement in the child's life in early 2014. Given both parent's failure to improve their relationship with or care of the child, it is in the child's best interests to terminate the parents' rights and allow the child to find a permanent placement as soon as possible.

*C. Mitigating Factors*

The mother further contends the district court failed to give proper weight to the statutory factors weighing against termination found in Iowa Code section

232.116(3).[2]  She argues the close bond she shares with the child and the fact that the child is currently placed with her parents should have led the juvenile court to exercise its discretion not to terminate her parental rights.  However, the facts to which the mother cites are simply factors for the juvenile court to consider, and they are not determinative.  *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997); *In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007).

"[O]ur consideration must center on whether the child will be disadvantaged by termination."  *D.W.*, 791 N.W.2d at 709.  There is no evidence suggesting the child will be disadvantaged by termination in this case.  We agree with the juvenile court; the mitigating factors found in section 232.116(3) do not overcome the propriety of termination arising from the circumstances in this case.

There is clear and convincing evidence of the grounds relied upon by the juvenile court to support termination of both parents' parental rights.  Termination is in the best interests of the child, and the statutory factors mitigating the need for termination do not overcome our best-interests determination.  We affirm the juvenile court.

**AFFIRMED ON BOTH APPEALS.**

---

[2] Section 232.116(3) provides in relevant part, "The court need not terminate . . . if the court finds . . . [a] relative has legal custody of the child[ or] . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."