# IN THE COURT OF APPEALS OF IOWA

No. 18-0794
Filed October 10, 2018

**IN THE INTEREST OF A.B.,**
**Minor Child,**

**M.C., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Steven L. Cooper of Cooper, Goedicke, Reimer & Reese, PC, West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

ConGarry D. Williams of Juvenile Public Defender's Office, Des Moines, guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

A mother appeals the termination of her parental rights to her fifteen-month-old child, A.B.[1]  The mother contends that grounds for termination have not been proved by clear and convincing evidence, she should have been granted an extension of time to seek reunification, termination is not in the child's best interests, and the mother-child bond should preclude termination in any event.

We review termination-of-parental-rights proceedings de novo.  *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses."  *Id.* (citation omitted).

The mother has long-standing, unresolved issues of mental health (depression and anxiety) and substance abuse (methamphetamine).  Despite months of involvement with the juvenile court, she had only recently engaged with a mental-health provider.  The mother asserts she had a "long period of sobriety at the time of the termination hearing."  The record, however, establishes the mother consistently tested positive for methamphetamine and other substances from the time A.B. was removed from the mother's care in May 2017 until the mother was ordered to serve 100 days in jail, beginning in September 2017.[2]  She was pregnant when she was jailed.  The mother was released from custody on January 4, 2018, and gave birth to a child on January 25.  The termination hearing concerning A.B. was held on January 31 and February 21, 2018.  In that January

---

[1] The putative father's rights were also terminated, and no appeal was filed.

[2] During substance-abuse evaluations, the mother variously acknowledged consistent drug use for two or four years prior to this involvement with the department of human services (DHS).

and February time period, the mother had been living at either the House of Mercy or the Hope Ministries. While she may have been free of substances from September 2017 to February 2018, the mother had been released from custody for only about a month. This does not establish a commitment or the ability to live a substance-free life outside of a restricted setting. Moreover, the mother has a newborn baby, and the mother has not demonstrated an ability to attend to A.B.'s many medical needs.

The child is under the age of three, was adjudicated a child in need of assistance on June 27, 2017, has been removed from the mother's custody for at least the last six consecutive months, and cannot be returned to the mother's care at present. Consequently, there is clear and convincing evidence to support the termination of the mother's parental rights under Iowa Code section 232.116(1)(h) (2018).

We must next determine whether the best-interest framework laid out in section 232.116(2) supports termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018). Section 232.116(2) provides in relevant part,

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child. This consideration may include any of the following:
> (a) Whether the parent's ability to provide the needs of the child is affected by the parent's mental capacity or mental condition . . . .
> (b) For a child who has been placed in foster family care by a court or has been voluntarily placed in foster family care by a parent or by another person, whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family. . . .

Balanced against the mother's unresolved concerns, we note that at about three-months of age, A.B. was diagnosed with severe mitral valve regurgitation, severe left atrial dilation, and moderate left ventricle dilation. The child was prescribed medication and referred to a pediatric cardiologist. The mother did not take A.B. to this follow-up cardiology appointment. Nine days later, A.B. was admitted to the pediatric intensive care unit. On March 15, 2017, she had to have surgery to repair her right and left coronary arteries, and a bovine patch was put in place. On April 4, A.B. had another heart surgery and was provided further intensive services. When A.B. was discharged on May 19, it was not to the mother's care but to a suitable other placement.

A.B. takes a number of life-saving medications that must be administered in a timely manner. The mother's history does not demonstrate she is able to care for this child who has significant cardiovascular medical needs. The child's current placement family sets alarms throughout the night to wake up and administer A.B.'s medication. This family has undergone special classes and training for physical therapy and other exercises. They have provided care and stability for the child and have expressed a willingness and desire to provide a permanent home. As found by the district court:

> A.B.'s current placement is willing and able to adopt her. They have provided for her medical needs, when the mother has not. They have provided her with a safe, and stable home. They are willing to make her a permanent part of their family. In all ways it is in A.B.'s best interest to terminate the mother's parental rights.

Moreover, we conclude there is nothing in the mother's history or in her involvement with DHS that would allow us to determine the need for removal will

no longer exist in six months—which is a required finding to grant an additional six months. *See* Iowa Code § 232.104(2)(b). The mother has two older children with whom she has no contact because of her ongoing substance abuse. Although the mother had enrolled in a residential treatment program at the time of the termination hearing, she has a history of beginning treatment programs and then leaving early or being unsuccessfully discharged. We agree with the juvenile court that "the mother's last minute rush to start services, nine days before the termination trial is insufficient to avoid termination."[3]

The mother contends that the mother-child bond should preclude termination here. It is true "[a] strong bond between parent and child is a special circumstance which militates against termination when the statutory grounds have been satisfied." *In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007) (citing Iowa Code § 232.116(3)(c)). Yet, even were we to assume such a bond, it would be but one factor to consider, and the factors are "permissive, not mandatory." *A.M.*, 843 N.W.2d at 113. The court may use its discretion, "based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.,* 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). We agree with the juvenile court that the mother-child bond

> has been affected by the mother's choices which include being non-attentive during visits, missing visits, ending visits early and violating her probation resulting in significant period of incarceration. The

---

[3] "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.S.*, 906 N.W.2d at 474.

prior DHS worker noted A.B. does not always recognize the mother.
A.B. will not be disadvantaged by termination.

Because there are grounds for termination and termination is in the child's best interests, we affirm the termination of the mother's parental rights.

**AFFIRMED.**