**IN THE COURT OF APPEALS OF IOWA**

No. 20-1167
Filed November 4, 2020

**IN THE INTEREST OF P.N.,**
**Minor Child,**

**C.S., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

        A mother appeals the termination of her parental rights to her infant son. **AFFIRMED.**

        Jessica L. Wiebrand, Cedar Rapids, for appellant mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

        Kimberly A. Opatz of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

        Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

Since birth, P.N. has been removed from parental care. After a year of services did little to improve the parents' ability to care for their son, the juvenile court terminated their rights. Only the mother, Christian, appeals. She contends 1) the State failed to prove P.N. could not be returned to her care; 2) the court should have given her another three to six months to work toward reunification; 3) termination was not in P.N.'s best interests; and 4) the court should have invoked an exception to termination. On our de novo review, we affirm the juvenile court.[1] The record contains clear and convincing evidence that Christian could not resume custody of P.N. because of ongoing struggles with her mental health and substance abuse. Because Christian cannot meet P.N.'s day-to-day needs on her own, termination is in the child's best interests.

## I. Facts and Prior Proceedings

The Iowa Department of Human Services (DHS) became involved with the family in July 2019 after the hospital where P.N. was born reported concerns about Christian's ability to care for the newborn. While Christian was pregnant with P.N., she tested positive for marijuana and was "sporadic" in her prenatal care. On top of that, Christian had a history of mental-health issues, lacked social and family support, and struggled to meet her own medical needs. Believing the newborn's physical health and well-being were at imminent risk, the juvenile court removed

---

[1] We review termination orders de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The State must show by clear and convincing evidence the statutory grounds to support termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Our top priority is the child's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination).

P.N. from the parents' custody upon release from the hospital.[2]  P.N. has lived in foster care since then.  That September, the court adjudicated P.N. as a child in need of assistance.

As part of court-ordered services, Christian completed a drug test and underwent a psychiatric evaluation, which included cognitive testing.  During the evaluation, Christian downplayed her drug use.  She admitted that during her pregnancy she smoked marijuana one time and consumed alcohol but insisted her drinking was infrequent.  She denied using any other illicit substances.  Yet, her October drug test was positive for amphetamines, methamphetamine, and cocaine.

According to her psychiatric report, Christian was "in the intellectually disabled range," with a "pervasive pattern of low intellectual ability."  Explaining the effect on her parenting capacity, the evaluator noted:

> This lower level of intellectual ability has significant impact not only in regard to [Christian's] caring for herself but also in caring for a young infant. . . .  Aside from daily parenting responsibilities, she would likely have great difficulty with decision making, assisting her son in social and academic development, and benefitting from any services provided to her.

Christian also continued to struggle with her prior mental-health diagnoses, including borderline personality disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder.  She was hospitalized nearly twenty times from 2017 to 2019 because of self-harm tendencies.  Christian reported having "verbal outbursts on an almost daily basis."

---

[2] The father did not complete a paternity test until October 2019.  The test confirmed he was the biological father.

In late October, Christian faced eviction from her apartment because she had violent altercations with friends and neighbors at the complex. She did not have her own place to live for several months.

At the permanency hearing in February 2020, family safety, risk, and permanency (FSRP) workers assigned to the case offered all of Christian's progress reports since August. According to those reports, Christian was inconsistent in her visits with P.N., she did not comply with drug testing, and she did not engage in the therapy services provided. The workers also noted concerns about Christian's parenting abilities. During her visits with P.N., Christian did not know how to interact with him, how to hold him, or how to feed him without asking for help. She needed frequent reminders on "how many scoops of formula to ounces of water to make a bottle."

After observing months of DHS involvement with no positive progress, the State petitioned for the termination of Christian's parental rights. Still, from February through June, Christian showed little change. Unable to secure housing, she stayed at different homes most nights. She had more physical altercations with her acquaintances. She also maintained unhealthy relationships with P.N.'s father and another past boyfriend despite reporting incidents of domestic violence. By July, Christian still "constantly" needed help with basic parenting skills during her visits with P.N.[3] The DHS offered Christian parenting classes, but she refused.

The juvenile court held a termination hearing in August 2020. The State offered exhibits and witness testimony from three FSRP workers who worked

---

[3] From mid-March through mid-June, Christian and P.N. only had virtual visits because of COVID-19. Face-to-face visits resumed at the end of June.

closely with Christian throughout the proceedings. None of the service providers believed it was safe for Christian to resume care of P.N. Their main concerns included Christian's unresolved mental-health issues, her living environment, her unhealthy relationships, and her inability to meet P.N.'s daily needs. They expressed skepticism that Christian would remember to feed P.N., to give him a bath, or take him to the doctor without assistance. The FSRP workers acknowledged some progress in Christian's efforts but did not believe she was capable of basic parenting without continuous intervention.

Christian also testified at the hearing. When asked about her progress, she said she was going to therapy once in a while and taking her prescribed medications. She began renting out a "sleeping room" in a house earlier in July, where she shared the common areas with "lots of people." She admitted hanging around people who used drugs and were "bad influences." But she said she was learning to say "no" to them. Counsel posed this key question: "And are you asking the Court today to either provide you with more time or to return [P.N.] to your care?" And Christian responded: "I just want him home as soon as possible because I miss my son."

The juvenile court terminated Christian's parental rights under Iowa Code section 232.116(1)(h) (2020).[4] The court also determined termination was in P.N.'s best interest, finding no evidence "the bond between [P.N.] and Christian is

---

[4] In her petition on appeal, Christian's counsel argues termination was improper under section 232.116(1)(g). But the juvenile court did not cite that provision as a ground for termination.

so strong as to outweigh [P.N.'s] need for a safe, consistent and nurturing permanent home." Christian now appeals.

## II. Analysis

### A. Statutory Ground for Termination

Christian challenges the sufficiency of the evidence supporting termination under section 232.116(1)(h).[5] She contests the fourth element—whether the State offered sufficient proof that P.N. could be returned to her at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean "the time of the termination hearing"). She claims the State did not meet its burden because "she has made significant progress in parenting, obtaining housing and other case plan expectations," and "there is no evidence indicating this progress will not continue in the future."

Contrary to her claims, the State offered strong proof that Christian did not address the major issues interfering with her ability to become a capable parent. The record shows Christian continued to struggle with her aggression, her relationships with others, and her parenting skills by the time of the termination

---

[5] The court may order termination if it finds these four elements:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

hearing. She also lacked safe and stable housing. And after a full year of services, none of the FSRP workers believed Christian had the capacity to take care of P.N. on her own.

Service providers also expressed concerns about Christian's lack of insight into her mental-health and substance-abuse issues. Christian repeatedly denied using illegal substances despite her positive drug test in October. Her failure to comply with additional drug testing reflects her unwillingness to address her problems. Christian's lack of accountability for her substance abuse weighs against her claim that she could safely resume care of P.N.

Christian claims the changes in visits because of COVID-19 affected her ability to meet case expectations. We acknowledge the restrictions did not help. But the same concerns were present even earlier. On this record, we find clear and convincing evidence to support termination under section 232.116(1)(h).

**B. Additional Time**

Alternatively, Christian claims the juvenile court should have given her "additional time to work towards reunification to prove that she has and can continue to meet case plan expectations and maintain a safe and stable home for P.N." Christian makes no real argument on this issue. Rather, she weaves this issue into her other claims. In response, the State contests error preservation.

We apply error-preservation rules to termination-of-parental-rights cases. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Based on the general rule, a parent cannot request additional time to work toward reunification for the first time on appeal. *See id.*; *see also In re A.U.*, No. 13-0599, 2013 WL 2646971, at *3 (Iowa Ct. App. June 12, 2013) (finding parent did not preserve error on issues not

ruled on by the juvenile court). Because the juvenile court did not rule on this issue, and Christian did not request a ruling addressing it, she did not preserve error on this claim.

### C. Best Interests of the Child and Exceptions to Termination

We turn to whether termination was in the child's best interest. *See* Iowa Code § 232.116(2). Conflating the best-interests determination with the statutory exceptions to termination, Christian points to her "strong bond with P.N." and claims "it would be detrimental to him if parental rights were terminated." *See* Iowa Code § 232.116(3)(c).[6]

While a strong bond between a parent and her child may weigh against termination of parental rights, it is "not an overriding consideration, but merely a factor to consider." *In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007). We primarily consider: (1) the safety of the child; (2) the best placement for promoting his long-term growth and nurturing; and (3) his physical, mental, and emotional condition and needs. Iowa Code § 232.116(2); *see also In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We may also consider the child's integration into his foster family. *See* Iowa Code § 232.116(2)(b).

We acknowledge P.N. has a bond with Christian. An FSRP worker testified that when P.N. sees Christian he "has a big smile on his face and he grabs for her." But like the juvenile court, we do not believe that connection outweighs the serious concerns for P.N.'s long-term safety and growth. Christian had a full year

---

[6] Christian acknowledges the juvenile court had discretion to decide whether to apply this exception to termination. *See In re A.R.*, 932 N.W2d 588, 591 (Iowa Ct. App. 2019) (explaining exceptions are permissive, not mandatory). The parent has the burden under that provision. *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

to show she was ready to be P.N.'s parent. But during that time, she did not make the necessary changes to establish a safe and stable environment for P.N. She refused to fully engage with the services provided and did not make sufficient progress on her parenting deficiencies.

We recognize a decision to terminate parental rights must not rest solely on a parent's intellectual disabilities. *See A.M.*, 843 N.W.2d at 111. But where a parent's lower mental functioning affects a child's well-being, it can be a relevant consideration. *Id.* Much like the situation in *A.M.*, it is significant to us that the service providers did not believe Christian was capable of meeting P.N.'s physical and mental needs on her own. *See id.* at 112. We also rely on the guardian ad litem's statement: "[P.N.] has been removed from parental care for eight months. He has never resided in parental care. His foster parent has been his primary caregiver his entire life. In the event parent rights are terminated, she would like to be considered as a long-term adoptive placement." Under these circumstances, we find termination was in P.N.'s best interests. And Christian has not satisfied her burden to show section 232.116(3)(c) precludes termination.

**AFFIRMED.**