# IN THE COURT OF APPEALS OF IOWA

No. 16-0840
Filed August 17, 2016

**IN THE INTEREST OF M.L.V., a/k/a M.V.C.,
Minor Child,**

**S.L., Father,**
     Appellant.
_____

     Appeal from the Iowa District Court for Polk County, Louise M. Jacobs, District Associate Judge.

     A father appeals the termination of his parental rights to his one-year-old son. **AFFIRMED.**

     Dale D. Mays of Benzoni Law Office, Des Moines, for appellant father.

     Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

     ConGarry D. Williams of the State Public Defender's Office, Des Moines, for minor child.

     Earl B. Kavanaugh, Jaclyn M. Zimmerman, and Catherine C. Dietz-Kilen of Harrison & Dietz-Kilen, PLC, Des Moines, for intervenor.

     Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

A father appeals the termination of his parental rights to his one-year-old son, M.L.V. (a/k/a M.V.C.). The juvenile court granted the petition to terminate the father's rights under Iowa Code section 232.116(1)(e), (g), and (h) (2015).[1] The father contends: (1) he was denied reasonable efforts when the juvenile court failed to grant him a six-month extension to regain custody of M.L.V. and (2) termination of his parental rights was not in M.L.V.'s best interests. Because the juvenile court's order gives M.L.V. the best opportunity for long-term stability, we affirm.

## I.  Facts and Prior Proceedings

M.L.V. was born in May 2015. At the time of his birth, he tested positive for illegal substances, and the Iowa Department of Human Services (DHS) became involved. The DHS placed M.L.V. in foster care. In July, the juvenile court adjudicated M.L.V. as a child in need of assistance (CINA) primarily due to his parents' substance abuse.

Following adjudication, the father participated in a small number of the services the DHS offered to assist him in reunification with M.L.V., including paternity testing and intermittent supervised visitation. The father was no stranger to the DHS—he was in the midst of a termination proceeding involving a different child at the time of M.L.V.'s birth. He similarly participated in only limited services with his other child and failed to complete—or even begin—substance-abuse treatment at any time during those proceedings. The juvenile court terminated his parental rights to that child in October 2015.

---

[1] The juvenile court also terminated the mother's parental rights. She has not appealed.

Near the end of November 2015 the father was incarcerated for probation violations. He was released in late December. While in custody, the father obtained a substance-abuse evaluation, and he entered an outpatient substance-abuse treatment program on January 5, 2016. The next day, the court held a permanency hearing and directed the State to file a petition to terminate parental rights. The termination hearing took place on March 11.

After the father's release from custody in December 2015, he resumed visitation with M.L.V. At the time of the termination hearing, he was scheduled for one two-hour supervised visitation each week. But he had not progressed to unsupervised or semi-supervised visitation, and he continued to miss visits. Between the time he began visits with M.L.V. in September 2015 and the termination hearing in March 2016, the DHS could identify only one month in which the father attended every scheduled visit. In February alone, he missed three consecutive visits with M.L.V. without providing any credible reason for his absence.

At the termination hearing, the father acknowledged a long history of drug use. He testified he had started treatment but was unable to explain particulars about the treatment program and admitted drinking alcohol a few weeks before the termination hearing and missing a full two weeks of treatment since he had begun. The father had to complete the treatment as a requirement of his probation but also cited reunification with M.L.V. as a motivation.

The father also offered testimony about the stability of his living situation and his ability to address the needs of a child. He did not have permanent employment or a steady income and was living in his mother's three-bedroom

home with four other adults and a child. Although he planned to start full-time work in the near future, at the time of the hearing, the father had only limited employment performing snow removal. He had not worked since the last snowfall, about one month before the hearing. None of the father's other six children were in his care nor had he ever financially supported them. In fact, he admitted to paying a total of $0.89 in child support to his first five children.

In its order issued on May 2, 2016, the court concluded the State proved termination of the father's parental rights by clear and convincing evidence under Iowa Code section 232.116(1)(e), (g), and (h). The father now appeals.

## II.    Standard of Review

We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Although we are not bound by the fact-findings of the juvenile court, we do give them weight, particularly the court's credibility determinations. *Id.* Evidence must be clear and convincing to support the termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence is clear and convincing when there are no serious or significant doubts as to the correctness of conclusions of law drawn from the evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

## III.    Analysis

**Additional Time.** While conceding the statutory grounds for termination have been met, the father argues he did not receive reasonable efforts—namely, an additional six months—to allow him to reunify with M.L.V.[2] *See* Iowa Code

_____

[2] Under Iowa Code section 232.102(7), the DHS is required to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the

§ 232.104(2)(b) (allowing court to delay "placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order"). He contends an additional six months would have allowed him to "complete his substance abuse treatment, demonstrate his sobriety over a longer period of time, obtain permanent employment, and bond even more strongly with M.L.V."

To grant a parent additional time, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* We find additional time would not be warranted here.

First, the father was dilatory in obtaining treatment for substance abuse. Although he reported he had enrolled in treatment at the time of the termination hearing, he did not begin the program until January 2016, nearly seven months after the court removed M.L.V. from his care and only one day before the permanency hearing. Nor did the father's testimony demonstrate an intent to make a permanent change in his lifestyle. He reported absences from his treatment program and admitted drinking alcohol only a few weeks before the hearing. Further, because of the father's lack of cooperation, the DHS was unable to confirm his treatment progress or that he was enrolled in treatment at all.

---

best interests of the child." This section focuses on "services to improve parenting" and "includes visitation designed to facilitate reunification." *In re C.B.*, 611 N.W.2d at 493. Because the father does not contest the sufficiency of the services offered by the DHS, we treat this claim as an argument for continuing placement for an additional six months rather than one of a failure to make reasonable efforts.

Second, the father was persistently inconsistent with visitation. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."). Although the assigned DHS worker observed more regularity in the father's visitation after his release from custody in late December, the father continued to miss visits, failing to progress to even semi-supervised visitation in the nine months between M.L.V.'s removal and the termination hearing.

Overall, the record demonstrates a pattern of the father's unreliability and inability to support M.L.V. We cannot find with any certainty that another six months would eliminate the need for M.L.V.'s removal. *See In re A.A.G.*, 708 N.W.2d 85, 93 (Iowa Ct. App. 2005) (finding mother's "resistance to the services offered, her last-minute improvement, her pending criminal charges, [and] the uncertainty of her continued sobriety" all weighed against providing an extension).

**Best Interests.** The father also argues termination of his parental rights is not in M.L.V.'s best interests. He asks us to consider the strong parent-child bond and the importance of M.L.V. developing a relationship with his siblings. *See* Iowa Code § 232.116(3)(c) (stating the court need not terminate if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). The father maintains that although he does not live with M.L.V.'s siblings, he visits them regularly, and placement with him would allow M.L.V. to forge relationships with his siblings.

The best interests of the child are of utmost concern in termination proceedings. *In re L.L.*, 459 N.W.2d at 493. To determine whether termination of the parent-child relationship is in a child's best interests, we primarily consider: (1) the safety of the child; (2) the best placement for promoting his long-term growth and nurturing; and (3) his physical, mental, and emotional needs. Iowa Code § 232.116(2); *see also In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). While a strong bond between a parent and child may weigh against termination of parental rights, it is "not an overriding consideration, but merely a factor to consider." *In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007). Similarly, siblings should be kept together whenever possible, but separation of siblings may be warranted when it better promotes the interests of the child. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994); *see also In re M.M.*, No. 14-1877, 2015 WL 2394197, at *4 (Iowa Ct. App. May 20, 2015).

Upon review of these considerations, we agree with the juvenile court's determination that M.L.V.'s best interests are served by termination of his father's parental rights. M.L.V. has been in foster care since shortly after his birth, and as previously discussed, the father's visits since removal have been inconsistent. The record shows no significant contacts between M.L.V. and his siblings to date, and because the father does not live with any of M.L.V.'s siblings, reunification of M.L.V. and his father would not reunify M.L.V. with his siblings within the meaning of our prior case law. *See In re T.J.O.*, 527 N.W.2d at 420 ("[T]he paramount concern in these cases must be the child's best interests. The record is clear it would not be in T.J.O.'s best interests to now seek to establish a

relationship with a sibling he does not even know."). Any bond that has developed with his father fails to outweigh M.L.V.'s need for permanency.

Accordingly, we affirm the decision of the juvenile court terminating the father's parental rights.

**AFFIRMED.**