# IN THE COURT OF APPEALS OF IOWA

No. 17-1678
Filed January 24, 2018

**IN THE INTEREST OF S.E.,**
**Minor Child,**

**P.H., Father,**
   Appellant,

**K.J., Mother,**
   Appellant.

_____

Appeal from the Iowa District Court for Page County, Amy L. Zacharias, District Associate Judge.

A mother and father each challenge a juvenile court order terminating their parental rights to their four-year-old son. **AFFIRMED ON BOTH APPEALS**.

Sarah M. Hart of Reisinger Booth and Associates, P.C., L.L.O., Omaha, Nebraska, for appellant father.

Justin R. Wyatt of Woods & Wyatt, P.L.L.C., Glenwood, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Vicki R. Danley, Sidney, guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

Parents, Philip and Kassandra, separately appeal the termination of their parental rights in their now four-year-old son, S.E. The Iowa Department of Human Services (DHS) took custody of S.E. based on Kassandra's methamphetamine use. On appeal, Kassandra challenges the juvenile court's determinations S.E. could not be returned to her care, she failed to maintain significant and meaningful contact with S.E. and made no efforts to resume care for S.E., and termination was in S.E.'s best interests. Kassandra also requests an additional six months to work toward reunification. Philip challenges the juvenile court's determinations S.E. could not be placed with him, he failed to maintain significant and meaningful contact with S.E. and made no efforts to resume care for S.E., and termination was in S.E.'s best interests. Philip also argues S.E. was never removed from his care because he was the noncustodial parent, and the State failed to make reasonable efforts to support reunification.

After independently reviewing the record, we reach the same conclusion as the juvenile court regarding the termination of parental rights.[1]

## I.     Facts and Prior Proceedings

S.E. and his half-siblings[2] came to the attention of the DHS in October 2015 after a child protective worker found Kassandra failed to provide proper supervision for the children. In May 2016, Kassandra tested positive for methamphetamine;

---

[1] Our review is de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome. *See id.* Proof must be clear and convincing, meaning there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

[2] Philip is not the biological father of the other children.

S.E. was voluntarily placed with a family friend. Citing Kassandra's continued drug use, the State filed a petition alleging S.E. and his siblings were children in need of assistance (CINA). In August 2016, S.E.'s placement could no longer care for him, and he was formally removed from his parents' custody through an ex parte order and placed in foster care.

Because state officials could not locate Philip after a diligent search, they served him notice of the CINA hearing via publication. In October 2016, Philip and Kassandra appeared telephonically at the hearing where S.E. was adjudicated CINA.[3] The juvenile court advised both parents to seek mental-health and chemical-dependency evaluations, follow their respective substance-abuse and mental-health recommendations, submit to random drug screenings, actively engage in Family Safety, Risk, and Permanency (FSRP) services, and participate in visitation.

The parents did not follow that advice. Philip did not remain engaged with services, did not remain in contact with his attorney, and did not file the necessary paperwork to allow the attorney to be paid by the State. After obtaining Philip's updated contact information, an FSRP worker text messaged him the date and time of an upcoming family team meeting. But Philip did not attend the meeting. And Kassandra consistently either failed to complete requested drug screens or tested positive for illegal substances.

Both parents appeared in person for the first time before the juvenile court at a February 2017 review hearing. The court warned the parents to comply with

---

[3] All three of Kassandra's children were classified as children in need of assistance.

services or risk termination of parental rights. Philip appeared to initially take this warning seriously. He moved in with his aunt to establish more stable housing and he got a job. He also completed a chemical-dependency evaluation and was to begin substance-abuse treatment in February. But Philip did not show up for treatment and did not contact the facility. Eventually, Philip again attempted inpatient treatment but left after just a week. For her part, Kassandra entered inpatient substance-abuse treatment in March 2017 and completed a thirty-day program. But while in treatment Kassandra did not finish assignments and became upset when staff recommended additional treatment. Upon her discharge she entered outpatient treatment despite recommendations she complete an additional thirty-day inpatient program.

In May 2017, Kassandra moved into her paramour's home and hoped to have visitation with S.E. there. While her paramour completed an initial background check, he failed to provide any explanation for his significant history of criminal convictions and abuse reports. Both parents attended a May court hearing and provided drug screens free from unprescribed substances. That same month, the State filed its petition to terminate parental rights in S.E. Then both parents began to miss random drug screens. Kassandra submitted one subsequent drug screen on June 22, 2017 and tested positive for methamphetamines, amphetamines, and THC.

The juvenile court held a termination-of-parental-rights hearing on September 19, 2017. Both Kassandra and Philip were present but only Kassandra testified. The juvenile court concluded Philip and Kassandra abandoned S.E. under Iowa Code section 232.116(1)(e) (2017) and S.E. could not be returned to

either parents' home under Iowa Code section 232.116(1)(h). The court also concluded the State provided reasonable efforts supporting reunification and termination of Philip and Kassandra's rights is in S.E.'s best interests. Both parents now appeal.

## II. Analysis of the Parents' Issues

### A. Kassandra's Claims

### 1. Ground for Termination

Kassandra challenges both grounds for termination cited by the juvenile court. To affirm, we need to find facts to support just one of the grounds. *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). We focus our analysis on paragraph (h).

Under that paragraph, the State must prove:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

Kassandra only challenges the fourth element; she asserts S.E. could be returned to her home at the present time. Kassandra argues had the DHS more thoroughly investigated her current situation, it would have returned S.E. to her care. She notes no worker visited her home to assess its condition and argues a more extensive review of her live-in paramour would alleviate any concern the

DHS has about him being around S.E. But Kassandra ignores the acknowledged fact that a DHS worker tried twice to visit the home.[4] The inability of the DHS to inspect Kassandra's home lies at her feet. She and her paramour also failed to provide the additional information requested by the DHS regarding his past. Without a home inspection or further explanation of the paramour's criminal history, S.E. cannot be placed in the home. *See In re A.R.*, No. 17-1459, 2017 WL 6517534, at *2 (Iowa Ct. App. Dec. 17, 2017) (noting mother's decision to live with a paramour with a criminal record); *In re R.S.*, No. 17-0667, 2017 WL 3525313, at *2 (Iowa Ct. App. Aug. 16, 2017) (explaining DHS could not complete necessary home inspection because of the mother's conduct).

Kassandra's arguments reflect her inability to fully grasp the DHS's concerns regarding her parenting abilities. She fails to appreciate S.E. was removed from her care due to her drug use and inability to show any significant period of sobriety. Throughout the life of this case she has produced several positive drug screenings and failed to complete several more. She has not completed her outpatient therapy, though she opined she easily could but just has a problem with "lack of follow through."

We cannot be confident S.E. would be safe if returned to Kassandra's care. Beyond concerns about her ability to stay sober, her general conduct presents concerns about her ability to provide adequate care for her son. On one occasion, she left her three children on side of the road with an FSRP worker after the worker

---

[4] Kassandra testified "She [Social worker Christina Williams] made an attempt to come see the home twice, I believe. I was sick this last time that she made an appointment, but it was not an appointment for a visit, but it was just to come see the home."

experienced car troubles. Kassandra found herself a ride and left rather than trying to assist her own children and the worker. Kassandra also has had difficulty keeping a home with basic functions, such as running water and utilities. Given these concerns, we conclude S.E. cannot be returned to Kassandra's care at the present time.

### 2. Best Interests

Kassandra also challenges the juvenile court's finding that termination was in S.E.'s best interests. She notes termination of her rights results in S.E.'s separation from his half-siblings. If possible, we prefer to keep siblings together. *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994). While we share her desire to keep S.E. with his siblings, preserving Kassandra's parental rights would not reach the desired result. Both of S.E.'s siblings are out of Kassandra's care, one is with her father and the other is in foster care. Even if S.E. was returned to Kassandra, he would not be reunited with his siblings. Looking at Kassandra's past performance as a guidepost, we conclude termination is in S.E.'s best interests. *See In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993).

### 3. Parental Bond

Kassandra also argues her strong bond with S.E. should preclude termination. Iowa Code section 232.116(3)(c) permits a juvenile court to consider a close parent-child relationship as a factor weighing against termination. But bonding is a permissible factor and not the overriding consideration. *In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007). While S.E. is clearly attached to Kassandra, the record indicates he is also attached to his foster family even exclaiming "I want my mom" in reference to his foster mother during a visitation.

Kassandra's bond with S.E. does not overcome the case for termination of parental rights here.

### 4. Additional Six Months

In the event we find grounds for termination, Kassandra asks us to grant her an additional six months to work toward reunification. A placement extension requires us to determine there will no longer be a reason for removal in six months. *See* Iowa Code § 232.104(2)(b). Through the pendency of these proceedings Kassandra was warned her inaction could lead to termination, yet her inaction persisted. Given this track record, we have little reason to believe Kassandra could address the DHS's concerns within the next six months. Kassandra testified about her long-standing problems with "follow through" at the termination hearing. Accordingly, we decline to grant Kassandra an additional six months to work toward reunification. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (noting termination should not be delayed in the hopes that a parent may someday become a suitable parent).

### B. Philip's Claims

### 1. Grounds for Termination

Philip also challenges both statutory grounds for termination cited by the juvenile court. To affirm, we need to find facts to support just one of the grounds. *J.B.L.*, 844 N.W.2d at 704. We again focus on paragraph (h).

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.16(1)(h).

Philip challenges the third and fourth elements. First, citing to *In re C.F.-H.*, 889 N.W.2d 201 (2016), Philip argues "removed from the physical custody" within subparagraph (3) requires a change in physical custody rather than a lack of physical custody. Because S.E. was removed from Kassandra's physical care and not his, Philip argues the State failed to satisfy subparagraph (3). We rejected this argument in *In re J.E.*, No. 17-1461, 2017 WL 6040009, at *2 (Iowa Ct. App. Dec. 6, 2017). We distinguished *C.F.-H.* by noting the child in that case was never removed from either parent's care. *Id.* But like the child in *J.E.*, S.E. was removed from his mother's care and that removal was "sufficient to start the statutory timelines counting toward termination as to either parent." *Id.*

Philip next challenges subparagraph (4); he contends S.E could be returned to his care at the time of termination. Philip argues his home was inspected by a DHS worker, and he had a full-time job and stable support system. Philip argues the State only presented the lack of information available to the DHS regarding Philip as justification for refusing to place S.E. with him.

Philip turns a blind eye to evidence running counter to his argument. While it is commendable that Philip eventually obtained housing with his aunt and found stable employment, these were not the only drawbacks to Philip's parenting. The DHS also expressed concerns about Philip's drug use and mental-health issues. He was instructed to obtain chemical-dependency and mental-health evaluations,

follow recommendations made by healthcare providers, submit to drug screenings, and participate in visitation. But Philip largely ignored these directives.

Eventually, Philip obtained a chemical-dependency evaluation in April 2017. But he did not adequately address his substance-abuse issues. He left inpatient care after one week and without any indication of a successful discharge. He only provided one drug screen in May 2017 and failed to submit to four subsequent drug screens. Philip's mental health is also concerning. He attempted suicide in September 2016 and has not submitted to a mental-health evaluation since then. Additionally, he failed to participate in visitation, completing just two interactions since August 2016. Given Philip's failure to address the DHS's concerns, we conclude S.E. could not be returned to Philip's care.

### 2. Reasonable Efforts

Throughout Philip's argument he suggests the DHS failed to make reasonable efforts toward reunification. *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) (noting DHS must make reasonable efforts to provide parents with services). The measure of reasonable efforts varies depending on the circumstances of each case. *Id.* (citing In *re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997)). On appeal Philip claims he "constantly asked for visitation to be set up" through his DHS social worker and the multiple FSRP workers. Philip provides no support for that assertion. He did not testify or provide specific instances when he requested visitation and was denied. The only evidence available regarding visitation indicates Philip, not the DHS, rejected visitation attempts.

While the DHS workers' testimony indicates minimal contact with Philip, the CINA record shows attempts to engage Philip. In August 2016, a DHS worker

helped him fill out Medicaid and food stamp paperwork. But reports indicate when the worker tried to contact Philip again, he was unresponsive. He later failed to attend a scheduled visitation. A worker also tried emailing him to set up visitation but Philip did not respond.

Even Philip's attorney could not reach him and had to withdraw from the case. When a worker was able to talk to Philip after Kassandra called him during visitation, she got his updated contact information and told Philip about the next family team meeting. But Philip did not attend. And when the worker tried to confirm a date and time for visitation, Philip did not confirm. He was also encouraged to set up visitations himself but did not. In February 2017, Philip was warned his parental rights may be terminated if he continued to ignore the court's concerns. Yet he did not attend the permanency hearing the next month. Philip's lack of contact with S.E. is due to his own failings—not a lack of reasonable efforts by the DHS.

### 3. Best Interests

Philip also alleges termination of his parental rights was not in S.E.'s best interests. Like Kassandra, he expresses concern that S.E. may be separated from his half-siblings. *See T.J.O.*, 527 N.W.2d at 420 (preferring to keep siblings together). Philip's concern is valid but not relevant to his appeal. Philip is not the father of S.E.'s half-siblings so termination of Philip's rights will not directly impact S.E.'s relationship with those children. And given Philip's lack of interest and involvement in S.E.'s life thus far, we conclude termination is in S.E.'s best interests. *See S.N.*, 500 N.W.2d at 34.

#### 4. Parental Bond

Finally, Philip cites S.E.'s close relationship with Kassandra as a basis for avoiding termination of *his* parental rights. He also argues there was no evidence showing a lack of emotional bonding between himself and S.E. Philip misinterprets Iowa Code section 232.116(3)(c). This paragraph permits a court to consider an unusually strong parental bond as a factor precluding termination. *See* Iowa Code § 232.116(3)(c); *Z.H.*, 740 N.W.2d at 652. The provision does not require the State to prove a lack of parental bond. *In re N.S.*, No. 14-1375, 2014 WL 5253291, at *3 (Iowa Ct. App. Oct. 15, 2014) ("There is no presumption of the parent-child bond, nor does the State have to show a complete lack of parent-child bond."). Kassandra's bond with S.E. is not relevant to termination of Philip's parental rights. Because there is no evidence of a strong parental bond between Philip and S.E., we do not find this permissible factor weighs against termination of Philip's parental rights.

### III. Conclusion

After our de novo review, we conclude: (1) S.E. could not be returned to Kassandra's care without risk of harm; (2) termination of Kassandra's rights is in S.E.'s best interests; (3) Kassandra is unlikely to address her challenges within six months; (4) S.E. could not be returned to Philip's care without risk of harm; (5) the DHS provided Philip with reasonable reunification efforts; and (6) termination of Philip's rights is in S.E.'s best interests.

**AFFIRMED ON BOTH APPEALS.**