# IN THE COURT OF APPEALS OF IOWA

No. 18-1095
Filed September 12, 2018

**IN THE INTEREST OF G.Y.,**
**Minor Child,**

**D.Y., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, District Associate Judge.

A father contests the termination of his parental rights to his one-year-old son. **CONDITIONALLY AFFIRMED AND REMANDED**.

Agnes G. Warutere of Warutere Law Office, Clive, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

A father, Devantea, appeals the juvenile court order terminating his parental rights to one-year-old G.Y. Devantea first alleges the juvenile court failed to ask about the child's Native American heritage. He next contends the State failed to make reasonable efforts to reunite him with G.Y. and did not investigate his adult relatives as placement options. Devantea also challenges the statutory grounds cited by the juvenile court for terminating his parental rights. After fully assessing the record, we affirm the juvenile court's order.[1] But because the appellate record raises questions concerning the father's possible membership in the Cherokee Indian tribe, we remand to ensure compliance with the notice requirements of the Iowa Indian Child Welfare Act (Iowa ICWA).

## I.     Facts and Prior Proceedings

G.Y. was born in December 2016. His parents are Devantea and Jennifer.[2] During her pregnancy with G.Y., Devantea assaulted Jennifer, breaking her jaw.[3] The Iowa Department of Human Services (DHS) started providing services to Jennifer following an October 2016 founded child-abuse report involving

---

[1] We review de novo termination-of-parental-rights proceedings. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We will uphold a termination order if it is supported by clear and convincing evidence of at least one statutory ground under section 232.116(1) (2018). *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "Clear and convincing" proof means we see no "serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *Id.* To the extent that this case involves interpretation of Iowa Code chapter 232B, our review is for correction of errors at law. *See In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

[2] The juvenile court terminated Jennifer's parental rights to G.Y. and his three stepsiblings in the same order, but she is not a party to this appeal. The order also terminated the parental rights of the father of the three older children; we address his separate appeal in another decision filed today, *In re K.N.*, No. 18-1135 (Iowa Ct. App. Sept. 12, 2018).

[3] Devantea pleaded guilty to assault causing bodily injury and the court imposed a criminal no-contact order (NCO).

inadequate supervision of her three older children. The juvenile court issued a removal order for all four children in March 2017, finding Jennifer was not providing proper supervision and Devantea was not an appropriate placement for G.Y. because he had a "history of violence including domestic assault and has an extensive drug related history and he has a[n] NCO in place with the mother as the protected party."

The juvenile court adjudicated G.Y. as a child in need of assistance (CINA) in April 2017.[4] Devantea contested the adjudication and asked the DHS to place G.Y. with Devantea's uncle. Devantea later asserted the DHS did not tell him why the paternal uncle was not considered a suitable custodian. In May 2017, Devantea tested positive for THC, the active ingredient in marijuana.

In the intervening year, Devantea had sparse contact with his son. He saw G.Y. in May 2017 and then not again until November 2017. Devantea attended visits on November 10 and 17, but refused to schedule or confirm any additional sessions.[5] Devantea did not engage in therapy to address his aggressive behaviors or participate in other services recommended by the DHS. He also continued to use controlled substances and failed to resolve an out-of-state warrant for his arrest.

After holding permanency hearings in March 2018, the juvenile court decided G.Y. should remain in out-of-home placement. The court found

---

[4] The juvenile court ordered paternity testing for Devantea on March 23, 2017. In May 2017, the court noted Devantea missed the scheduled paternity test and it had been rescheduled. In the termination order, the court noted Devantea acknowledged his paternity on the witness stand, but explained "it is not clear on this record whether testing occurred."

[5] For instance, Devantea declined a visit on December 8, 2017, because G.Y. had conjunctivitis and Devantea didn't want to be exposed.

Devantae—who did not attend the hearings—could not assume custody of G.Y. because he had "absented himself from his son's life" and had not taken part in any services. At the May 2018 termination hearing, Devantae testified he had not seen G.Y. since November 2017 because he felt "discouraged" his son was not placed with a family member. He also admitted sending Jennifer a threatening message stating: "My son don't come home in March, I promise to God I will smack your ass in the courtroom."

The juvenile court terminated Devantea's parental rights under three statutory provisions: paragraphs (b), (e), and (h) of Iowa Code section 232.116(1). He now appeals.

## II.    Analysis

### A. Tribal Notice under ICWA

Devantea asserts neither the juvenile court nor the DHS asked about his Native American heritage. He filed an affidavit with his petition on appeal stating under penalty of perjury: "I do have Native American Heritage, as both of my maternal grandparents are Native American, in particular Cherokee Indian." He contends the juvenile court erred in terminating his rights without showing the State sent proper notice to the tribe as required by Iowa Code chapter 232B, the Iowa ICWA.

The State responds that tribal notification was not required because the record does not support Devantea's claim G.Y. may be an Indian child.[6] The State

---

[6] Federal law defines an "Indian child" as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4) (2016). The Iowa ICWA includes a broader definition, stating an "Indian child" is "an

points to an ICWA affidavit filed by a DHS worker on March 6, 2017, asserting no Native American history was known or provided for G.Y. The State, citing *In re R.E.K.F.*, further contends we cannot rely on Devantea's affidavit because it was not part of the juvenile court record. *See* 698 N.W.2d 147, 149 (Iowa 2005) (striking exhibits attached to further review brief because they were not part of the record before the juvenile court).

The Iowa ICWA's tribal notice provisions require the juvenile court to notify the proper Indian tribe "whenever" it has reason to know an Indian child may be involved in an involuntary termination. *Id.* (citing Iowa Code § 232B.5(4)). The question of whether a child is an Indian child is for the tribe to answer. *Id.*

It is not clear Devantea was asked about his Native American heritage during the CINA case—the DHS worker's ICWA affidavit was filed before the juvenile court ordered paternity testing for Devantea. Now Devantea's affidavit places the court on alert G.Y. might be an Indian child, triggering the tribal notice requirements. Our court held a father's "vague statement about Native American heritage" where he previously denied having any Native American connections and could not name any specific relatives with tribal affiliations did not give a juvenile court reason to believe the child at issue was an Indian child. *See In re Z.H.*, 740 N.W.2d 648, 653–54 (Iowa Ct. App. 2007). Here, Devantea avowed both his

---

unmarried Indian person who is under eighteen years of age or a child who is under eighteen years of age that an *Indian tribe identifies as a child of the tribe's community.*" Iowa Code § 232B.3(6) (emphasis added); *see also In re A.W.,* 741 N.W.2d 793, 798–99 (Iowa 2007). In *A.W.,* our supreme court held Iowa ICWA's expansion of the definition of "Indian child" to include ethnic Indians not eligible for membership in a federally recognized tribe was unconstitutional as applied. *Id.* at 812.

maternal grandparents were Cherokee Indians. This more specific assertion provides reason to believe G.Y. is an Indian child. *See* Iowa Code § 232B.5(4).

In this context, the normal prohibition against considering matters outside the juvenile court record—enforced in *R.E.K.F.*—is not controlling. ICWA requires notice be sent to the appropriate tribes even though the possibility of G.Y.'s tribal membership did not come to light until the appeal. *See In re Kahlen W.*, 285 Cal. Rptr. 507, 513 (Dist. Ct. App. 1991) ("Notice is mandatory, regardless of how late in the proceedings a child's possible Indian heritage is uncovered."); *In re B.J.*, No. 242892, 2003 WL 21350355, at *2 (Mich. Ct. App. June 10, 2003) (remanding for notice to tribes when mother first raised possibility of her daughter being an Indian child on appeal), *overruled on other grounds by In re Morris*, 815 N.W.2d 62 (Mich. 2012); *see also In re Isaiah W.*, 373 P.3d 444, 451 (Cal. 2016) (allowing ICWA notice error to be raised for the first time in a direct appeal from an order terminating parental rights); *People ex rel J.O.*, 170 P.3d 840, 842 (Colo. Ct. App. 2007) ("[T]he notice requirements of the ICWA serve the interests of the Indian tribes and, therefore, cannot be waived by a parent and may be raised for the first time on appeal." (citing *In re Justin S.*, 150 Cal. Rptr. 3d 376, 383 (Dist. Ct. App. 2007)); *In re K.B.*, 301 P.3d 836, 840 (Mont. 2013) ("[F]ailure to comply with ICWA notice requirements may be raised for the first time on appeal.").

In a similar situation, our court rejected the State's claim of waiver where it did not appear from the record that notice was properly sent to the tribes, despite the child's status being raised before the juvenile court. *In re L.B.-A.D.*, No. 11-0456, 2011 WL 2112452, at *6 (Iowa Ct. App. May 25, 2011) ("[W]e find the mother's failure to preserve error on the issue does not waive the issue on appeal,

although it is unfortunate the mother waited until this appeal to first raise the notice issue.").[7] We likewise reject the State's waiver argument in this case.

We do agree with the State that reversal of the termination is not warranted. The proper procedure is to affirm the juvenile court's order on the condition that proper notification be provided. *See R.E.K.F.*, 698 N.W.2d at 150–51.

## B. Reasonable Efforts

Devantea next argues the DHS did not make reasonable efforts to reunify him with G.Y. as required by Iowa Code section 232.102(6)(b). Specifically, he complains the DHS did not notify his adult relatives of the CINA proceedings as required by section 232.84 and failed to place G.Y. with family members.

The State maintains the father did not preserve error on this claim. We agree. Devantea did not secure a ruling from the juvenile court on the general reasonable-effort issue nor on his more specific complaint concerning notice to adult relatives. *See In re K.N.*, No.11-1102, 2011 WL 4382995, at *4 (Iowa Ct. App. Sept. 21, 2011) (citing *In re A.M.H.,* 516 N.W.2d 867, 872 (Iowa 1994) (finding mother waived appellate claim by not raising issue through motion to enlarge or amend)). Without a ruling from the juvenile court, we have nothing to review.

## C. Statutory Grounds

In his final assignments of error, Devantea claims the juvenile court erred in terminating his parental rights under paragraphs (b), (e), and (h) of Iowa Code section 232.116(1). When the juvenile court terminates rights on more than one

---

[7] In *L.B.-A.D.*, we distinguished *In re J.D.B.*, 584 N.W.2d 577, 582 (Iowa Ct. App. 1998), where our court determined a parent who "failed to come forward with evidence" the children qualified as Indian children could not complain on appeal the juvenile court did not apply ICWA in the CINA proceedings. *L.B.-A.D.*, 2011 WL 2112452, at *6.

statutory ground, we may affirm the order on any ground supported by the record. *D.W.,* 791 N.W.2d at 707. We find the State proved paragraph (h) by clear and convincing evidence. The elements are four-fold:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated [CINA under] section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

Devantea challenges only the fourth element—the prospect for safely returning the child to the parent's custody. He points to his own testimony at the termination hearing that he was ready to care for G.Y., could financially meet the child's needs, would address his pending out-of-state charges, and was remorseful for his violence toward Jennifer. The juvenile court was rightly skeptical of Devantea's ability to assume care of G.Y. The father did not take part in services to address his substance abuse or history of violence. And as the State notes on appeal: "G.Y. is a toddler and Devantea is a virtual stranger to him because of Devantea's decision not to regularly participate in visitation throughout the CINA case." Termination was proper under paragraph (h).

We conditionally affirm the termination order, but remand for the purpose of providing proper notice to any interested Indian tribe under the federal and state ICWAs. If after proper notice, the tribe fails to respond within the appropriate timeframe or replies and determines the child is not eligible for tribal membership,

the termination order will stand. If the tribe responds and intervenes, reversal of the termination order and further proceedings consistent with the ICWA requirements will be necessary. We do not retain jurisdiction.

**CONDITIONALLY AFFIRMED AND REMANDED.**